SOLOMON S. SONNEBORN, PLAINTIFF IN ERROR, v. MANU-FACTURERS' INSURANCE COMPANY, DEFENDANT IN ERROR.

Defendant, in January, 1881, issued to plaintiff a policy of insurance on his household furniture contained in a frame building, to be occupied as a private summer residence. In the body of the policy imme-diately following the description, was inserted in writing the follow-ing provision: "It is hereby understood and agreed that the said premises are not to be used as a hotel or boarding-house, and that they are not to be left unoccupied any portion of the year." At the time plaintiff purchased, an employé of the former owner lived in, and with his family, occupied four rooms in one wing of the building, and continued to live there until April 5th, 1881. In March, plain-tiff employed H. to take charge of the place as gardener; he was to remove there and occupy the same rooms in the wing. On March 22d, 1881, H. went to the place and engaged board at a neighbor's, his family not accompanying him, owing to the sickness of his wife. H. slept at his boarding-house, but had the keys of the house, and assumed general charge of the place. On April 19th, the building took fire from leaves H. was burning on the grounds, and was entirely consumed, with the insured furniture. In an action on the policy—*Held*—

1. That the building was unoccupied within the meaning of the policy, which was therefore forfeited by the breach of the warranty.

2. A dwelling-house is only occupied within such a condition, when human beings habitually reside in it, and it is unoccupied when no one lives or dwells in it.

3. The phrase "left unoccupied" will not be construed as implying an abandonment or wilful vacation of the premises, leaving them uncared for.

On error to the Supreme Court.

This was an action on a policy of insurance against loss by fire, issued by the defendant in error.

The case was tried at the Essex Circuit, before Mr. Justice Depue and a jury. Upon the evidence for the plaintiff being closed, the justice ordered that the plaintiff be non-suited. To this, a bill of exceptions was taken, and the judgment on non-suit entered on that order is now sought to be reversed.

For the plaintiff in error, *E. C. Harris.*

For the defendant in error, *Joseph Coult.*

The opinion of the court was delivered by

GREEN, J. This is an action on a policy of fire insurance issued by the defendant corporation to the plaintiff, on his household furniture contained in a frame building, situate at Schooley's Mountain, Morris county, New Jersey, formerly known as the "Forest Grove House," and to be occupied as a private summer residence by the assured. In the body of the policy, immediately following the above description of the premises containing the property insured, was inserted in writing the following provision: "It is hereby understood and agreed that the said premises are not to be used as a hotel or boarding-house, and that they are not to be left unoccupied any portion of the year."

Non-compliance on the part of the assured with the above stipulation as to the occupancy of the premises, was set up as

a defence to the action ; and on the trial of the cause at the Circuit, the judge, on that ground, directed the plaintiff to be called.     The granting of the non-suit is the only error assigned for the reversal of the judgment.

According to well-settled rules of construction laid down in all the modern text-books, and repeatedly recognized and enforced in our own courts, the written agreement in this policy, as to the use and occupation of the premises containing the insured property, must be construed as an express promissory warranty on the part of the plaintiff, in the nature of a condition precedent.     An actual and literal compliance with this condition and warranty is essential to the plaintiff's right of recovery.     *May on Ins.*, § 156 ; *Wood on Fire Ins.*, § 165 ; *Flanders on Fire Ins.*, 226 ; *Dewees* v. *Manhattan Ins. Co.*, 5 *Vroom* 244 ; *Carson* v. *Jersey City Ins. Co.*, 14 *Vroom* 300.

The alleged failure of the plaintiff to comply with the stipulation that the premises were not to be left unoccupied any portion of the year, was the only ground of non-suit; and the sole inquiry now is as to the true meaning of the condition, and whether it was broken by the plaintiff.

It appears by the case that the plaintiff purchased the property, both building and furniture, in January, 1881, a few days before effecting the insurance.     At that time, one Alfred Smith, who was employed by the former owner, lived in, and with his family occupied four rooms in one wing of the building.     He continued in such occupation until the 5th of April, 1881, when he moved out, his engagement having expired.     In the month of March the plaintiff employed one Ferdinand Hoffman to go to Schooley's Mountain and take charge of the place as gardener.     He was to take his family there and live in the same rooms occupied by Smith, as soon as the latter should vacate them.     On the 22d of March, Hoffman went to Schooley's Mountain and engaged board at a neighbor's house, about a quarter of a mile from the premises described in the policy.     His family did not accompany him, in consequence of the sickness of his

wife. After his arrival, Hoffman obtained the keys of the main building, and assumed general charge of the place—working in the yard and garden, taking care of the stock in the barn, and occasionally going through some part of the house. He slept and had his breakfast and supper at his boarding-place, and when he went to his work, carried his dinner with him, and ate it on the place. On the 19th of April the building took fire from some leaves which Hoffman was burning on the grounds, and was entirely consumed, with the insured furniture. On the same day, but after the building had been burned, Mrs. Hoffman, with her children, arrived at Schooley's Mountain.

It is apparent that the stipulation that the premises should not be left unoccupied relates only to the dwelling-house which contained the property insured; it has no reference to the grounds, barn or out-buildings. The words " occupied " and " unoccupied " have received judicial construction in a great number of cases, and their true meaning as used in policies of insurance is well settled. They are always to be construed with reference to the nature and character of the building—the purposes for which it is designed and the uses contemplated by the parties as expressed in the contract. The occupancy of a dwelling, of a barn and of a mill, is in each case essentially different in its scope and character. The term " occupied " always implies a substantial and practical use of the building for the purposes for which it is intended, and as contemplated by the terms of the policy.

. A dwelling-house is chiefly designed for the abode of mankind. It is occupied when human beings habitually reside in it, and unoccupied when no one lives or dwells in it. The subject has lately been fully considered in two cases in the Court of Appeals of New York, *Herrman* v. *Merchants' Ins. Co.*, 81 *N. Y.* 184, and *Herrman* v. *Adriatic Ins. Co.*, 85 *N. Y.* 162. In the latter case will be found a large collection of authorities, to which it is unnecessary to refer, and the question is fully discussed in a well-considered opinion by Chief Judge Folger, in which he remarks that " an unoccu-

pied house is one in which there is not habitually the presence of human beings; and that for a dwelling-house to be in a state of occupation there must be in it the habitual presence of human beings, as at their usual and customary place of abode—not absolutely and uninterruptedly continuous, but it must be the place of usual return and habitual stoppage."

It was, however, urged on behalf of the plaintiff that the usual signification of the term " unoccupied " was modified or changed by the word immediately preceding it in the sentence, and that the phrase, " *left unoccupied*," implies an abandonment or wilful vacation of the premises, leaving them uncared for.    Such is not the natural import of the language, and no authority can be found for such unusual rendition. The phrase " shall not be left unoccupied any portion of the year " is equivalent to saying, " shall not be suffered to remain unoccupied during any part of the year."    A week is as essentially a portion or part of the year as a month or the season of spring or autumn.

Upon this construction of the stipulation and the admitted facts of the case, it cannot be disputed that the premises were occupied within the meaning of the policy up to the 5th of April, when Smith moved out.    It was not necessary that the whole building should be occupied, or any particular parts of it, unless so specified in the policy.    If human beings lived in and made their abode in the house, it was an actual and literal compliance with the warranty.    But with respect to the period of time intervening between the 5th of April and the destruction of the property, it is equally clear that the premises were unoccupied.    The supervision of Hoffman over the premises, his working on the grounds and caring for the stock at the barn, his daily visits to the house, fall far short of what constitutes the occupancy of a dwelling.    All combined do not fill the requirements of the plaintiff's warranty.    Hoffman himself (the plaintiff's witness) testified that from the time Smith moved out no family lived in the building; that he was the only person who had access to it, and his visits were simply to see if everything was all right.

It may be, as was alleged on the trial, that the plaintiff was ignorant of Mrs. Hoffman's sickness, and that, as a consequence, the building was remaining unoccupied.   It is immaterial to what cause, whether to neglect, to accident or misfortune, his non-compliance with the condition is attributable. The breach of the warranty necessarily carries with it a forfeiture of all his rights under the policy.

The non-suit was rightly granted, and the judgment of the Supreme Court should be affirmed.

*For affirmance*—The Chancellor, Magie, Parker, Reed, Scudder, Van Syckel, Green.   7.

*For reversal*—Dixon, Knapp, Cole, Paterson, Whitaker.   5.