No. 12,843.

JAMES A. YOUNG VS. TEXAS AND PACIFIC RAILWAY COMPANY.

51   295
f104 480

SYLLABUS.

A railroad company is liable if a conductor ejects a person from a car im' properly while the train is in motion.

A trespasser on a railroad train must be ejected at a place not perilous for one alighting in the night time.

To a crippled person, though unlawfully on a train, greater care and attention should be shown than to the one who may better protect himself in an unsafe place.

O N APPEAL from the First Judicial District Court for the Parish of Caddo.  *Land, J.*

*Thatcher & Welsh* for Plaintiff and Appellee.

*Wise & Herndon* for Defendant and Appellant.

Argued and submitted June 4th, 1898.
Opinion handed down June 22, 1898.
Rehearing refused February 6, 1899.

The opinion of the court was delivered by

BREAUX, J.   This was a suit to recover damages.   Plaintiff charged that he was ejected from one of the trains of the defendant Railroad Company; that he was made to fall by the violence of the conductor, who laid his hand upon him and pushed him out, while the train was in motion, where the track crosses a ravine about twenty feet deep.

Plaintiff averred that he had walked to Shreveport Junction, about

ten o'clock p. m., with a friend to meet the latter's father, who was expected on the train, and to ride back with them on the train to the city of Shreveport. This junction is about one mile west of that city. From it the east-bound train backs into the city.

He alleges that persons frequently ride to and from the junction on the train without paying anything.

In a short time after he had boarded defendant's train at the junction, in order to ride to the city, he was called upon by the conductor for a fare of ten cents. His reply to the conductor was that he did not have the fare. Whereupon the conductor said to him that he would have to get off the train. Being a cripple, plaintiff asserts that though the train had moderated its speed, he informed the conductor that he could not alight. In the language of the witness at the time he said he was ejected: "I told him I could not; that I was crippled, and he put his hand on my shoulder and shoved me off of the train, and I went down the embankment, and as I was going down the embankment, he, the conductor, said: 'Look out, catch yourself.'"

It appears that plaintiff was born cripple. He limped. From a child the large leader from the right foot to the leg designated the "tendon Achilles," had been shorter than the leader from the left foot to the left leg. A surgical operation was performed, enabling him to walk with less hinderance, but he still had a limp.

The conductor's report handed in to the company after the accident sets forth that a white man named Jim Young asserted that he had been pushed off the train between Shreveport Junction and Shreveport; that he fell through the bridge and was injured. He, the conductor, stated as part of the report that Young came on the train at the junction, and when he was asked for his fare he said he was only going to Jordan Station. He told him he must either pay or get off. He, Young, chose to get off and he was told to wait until the train stopped at the stock yard. When the train stopped he got off as he was told to do: that he did not fall through the bridge and was not injured. He was not pushed or even touched. That as he backed the train from Union depot; Young was standing at Jordan street. He ran to the porter as he flagged the crossing, and asked him who the conductor was. A few days after the accident, the conductor was interviewed by the reporter of a newspaper to whom he stated (the reporter testified) that Young was put off the train that had been brought to a dead stop in order that he might get out, for non-payment of fare. He denied

that he had resorted to any violence. The conductor as a witness, states that the reporter's statement was substantially correct; that his train stopped at the stock pen, where the plaintiff got off voluntarily and was not touched. But he denies that he had said to the reporter that he had put the plaintiff off the car.

The evidence discloses, that as alleged, persons did ride free of charge the short distance between Shreveport and the junction, but that not long prior, order had been given to collect the ten cents fare called for by the conductor of the plaintiff.

It appears, that there were two large bruises on plaintiff's leg, one above, the other below the hip joint. The hip joint was sprained. Sometime afterward it became apparent that the leg was smaller than it was when examined immediately after the accident. One of the physicians, as a witness, said in answer to the questions:

"Q.—You stripped Young and made a physical examination of him? "A.—Yes, sir.

"Q.—State whether or not in his condition it is necessary for Mr. Young to go with a crutch now, in his condition?

"A.—That's a thing very hard for a physician to say, but I would say that any condition which would cause the muscles of the leg to shrink, or rather, grow smaller, would also probably impair the functions of those muscles, consequently he might have to use a crutch. A physician can't tell by a physical examination whether it is necessary or not."

The case was tried before a jury. The verdict found was for fifteen hundred dollars damages, in favor of plaintiff. From the verdict of the jury, and the judgment of the court, plaintiff appeals.

There being some difference between the allegation contained in plaintiff's petition and the evidence offered by plaintiff to make out his case, defendant urged that one suing for injury growing out of negligence should set forth the material facts relied on as his cause of action and prove the combination of circumstances upon which he relied in bringing his suit. Thus, the plaintiff having presented the issue that the conductor pushed the plaintiff off the car, while in motion on a high embankment over a trestle, he should be confined to that issue.

There was no objection made to the admissability of the evidence on the ground here urged. If the evidence supplied the pleadings, and made it appear the plaintiff was forced by the conductor to get down

from the train at a dangerous place at night, plaintiff is entitled to damages for resulting injuries.

The facts presented by the record, without objection, are not to be passed over for the reason that the pleadings indicate a state of circumstances not entirely in accord with the evidence.

A waiver is virtually made by the failure to object to testimony not admissable on the trial of a cause because of the insufficiency of the allegation.

The evidence admitted was applicable to the issues raised. The court is, in consequence, without authority to refuse to give it effect. There was no inconsistency between the issue brought out by the facts regarding the unsafe place where the car stopped for the plaintiff to alight and the allegations of plaintiff that he was violently pushed out.

Inadmissable evidence of facts, not alleged, should be objected to when offered.

England vs. Gripen, 15th Ann. 304.

Holland vs. Cammett, 5th Ann. 706.

Manifestly plaintiff met with an accident on the night in question. It is not so clear that it happened as he alleges or as he testifies. He as a witness, is corroborated in essential particulars, by two of his witnesses. Highly credible witnesses, who were present, held different views of the facts which came to their notice. Conceding that this difference gives rise to some doubt we must give some weight to the jury's verdict. The record informs us that the jury in a body, accompanied by the sheriff in charge, under direction of the court, visited the scene where the injuries alleged were received. After having heard the testimony regarding the place at which plaintiff was made to get off, and after having examined the grounds, it was not difficult to decide where the plaintiff alighted and whether it was a safe or unsafe place. We infer from the facts of the case that the jury determined that it was an unsafe place. Such a verdict, in our view, is sustained by the facts.

The disagreement in regard to the facts chiefly relates to whether the defendant was pushed off the platform and steps of the car and whether the car was brought to a stop at the point where plaintiff asserts he was put off.

Plaintiff may have failed to sustain his case in the particulars just stated and yet the question of peril to plaintiff, growing out of the un-

FIFTY-FIRST ANNUAL REPORTS, 1899. 299ᐟ

Webster vs. N. O., City & Lake R. R. Co.

safe and dangerous place at which he was made to alight would still remain for determination.

If it be conceded that the jury decided all the grounds against the plaintiff, save the last, the evidence, in our judgment, would sustain the verdict, if credence be given to the measurements of distances at the place and the uncontradicted testimony of witnesses. It was not a place where a person could be put off in safety.

It was the duty of the conductor to eject the plaintiff from the train, but he was not warranted in acting with disregard of consequences. A wrong-doer has rights, as to his person, as well as to his property. He is not to be wantonly injured.

With reference to the amount of damages. The plaintiff in this court has prayed for an increase. We feel quite certain that it should not be increased. We think the amount allowed by the jury does full justice.

It is therefore ordered, adjudged and decreed that the judgment appealed from is affirmed.