(78 South. 245)

No. 21501.

O'REILLY v. IRWIN et al.

(Feb. 25, 1918. Rehearing Denied April 1, 1918.)

*(Syllabus by the Court.)*

1. TRIAL ⬥⟹105(2)—SIGNATURE—EVIDENCE.

Whatever may be the proper interpretation of Code Prac. art. 325, when construed with Civ. Code, art. 2245, testimony, admitted without objection and tending to overcome the defense that the signature to an instrument sued on has been forged, is entitled to be considered as in any other case where an acknowledgment is relied on.

*(Additional Syllabus by Editorial Staff.)*

2. PRINCIPAL AND SURETY ⬥⟹161 — FORGERY OF SIGNATURES — BURDEN OF PROOF — EVIDENCE.

In an action against defendants in solido upon a bond, plaintiff's evidence *held* to sustain the burden of overcoming defendants' denial of their signatures.

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by Mrs. Mary Flynn Hooth, wife of Peter J. O'Reilly, against Edwin Irwin, Jr., and Michael Irwin. Judgment for plaintiff, against defendants in solido, and they appeal. Affirmed.

McCloskey & Benedict, of New Orleans, for appellants. Dufour & Janvier and Charles I. Denechaud, all of New Orleans, for appellee.

MONROE, C. J. Plaintiff obtained judgment against the two above-named defendants, in solido, for $5,200, with interest, less $600, upon a bond alleged to have been given by them; the defense being that the signatures were forged. The instrument sued on contains a recital to the effect that James J. Woulfe, a notary, had invested the money of plaintiff in two notes of John Wells, each for $800, two notes of Mrs. Kate Regan Gardner, each for $1,050, two notes of John Espanos, each for $600, and two, each for $1,200; the condition of the obligation being that Woulfe, as principal, should assure the collection of the notes, all of which were then past-due, prior to January 1, 1914, and the instrument bearing date July 23, 1912. There was subsequently added the following, purporting also to be signed by Woulfe and the defendants to wit:

"Further description for further identification of the notes afore described herein, said two notes of John Wells being made payable respectively at one and two years after date, each for $800, and paraphed 'Ne varietur,' by James J. Woulfe, notary, in identification with act passed before him on June 2, 1910; and said two notes of Mrs. Kate Regan Gardner, each for the sum of $1,050, being made payable, respectively, at one and two years after date and paraphed 'Ne varietur,' by James J. Woulfe, notary, in identification with act passed before him on August 9, 1909. This additional description being herein made with our approval and acknowledgment as forms part of said bond."

Mr. Charles Denechaud, a member of the bar of high standing, testified that the original instrument, together with the notes therein mentioned were placed in his hands by the plaintiffs; that in looking over the bond he found that the Wells and Regan (Gardner) notes were inadequately described, and called Mr. Woulfe's attention to it; that Woulfe thereafter came to his office with the additional description written upon the bond and the signatures attached thereto, and "with him was Mr. Irwin"; and further as follows:

"Q. Which Mr. Irwin? A. The one sitting immediately to the right of Mr. McCloskey; I don't know his name. Q. Mr. Ed Irwin? A. Mr. Ed Irwin; he is the one [who] came to my office with Mr. Woulfe, and I asked him, in the presence of Mr. Woulfe, if he and his brother had signed this, and he told me 'Yes'; and I asked him if he and his brother had signed the signatures above, on the bond, and he told me 'Yes.' * * * Q. And he saw the document? A. Oh, yes; the document was opened by me, immediately, and exhibited to him and to Mrs. Woulfe. * * * Q. Did you see Michael Irwin? * * * A. If that is Michael Irwin, with the glasses, he was not there. Q. Did you ever see him before? A. Oh, I have seen these two gentlemen for years."

Being asked whether anything had been paid on account of the notes, prior to the institution of the suit, he replied that the

two Regan notes of $1,050 each had been paid, and $600 on the Asperus (Espanos) notes.

Edward Irwin, Jr., gives the following, with other, testimony:

"Q. Mr. Irwin, Mr. Denechaud, in whom I have every confidence, has testified that you called at his office and admitted those signatures? A. I have no recollection of ever being in Mr. Denechaud's office. Q. Mr. Irwin, might you not be mistaken about that? A. I am positive, Mr. McCloskey, I never remember being in Mr. Denechaud's office. Whereabouts is your office, Mr. Denechaud?"

Mr. Denechaud: "A. You know."

Mr. McCloskey: "Q. You don't know where his office is? A. I don't honestly."

Cross-examination:

"Q. You say, you have no recollection of going to Mr. Denechaud's office? A. No. sir; I have not. Q. Are you prepared to swear that you never went to Mr. Denechaud's office? A. With Mr. Woulfe? Q. Yes. A. Well, I could not exactly swear to that, but I am almost sure I never went to Mr. Denechaud's office with Mr. Woulfe. Q. Are you prepared to swear that you never went into Mr. Denechaud's office? A. No; I could not swear to that."

Mr. Denechaud, being recalled, testified further as follows:

"Q. You say, you saw him in your office; did you ever see him before? A. Oh, yes; I have known him all my life. He and his brother are always around the cigar store at the corner of Gravier and St. Charles—spend a good deal of time there. Q. Mr. Woulfe could not have brought any one else there? A. No, sir; I am just as positive about this as any testimony I have ever given, that the man who left the stand was in my office with James J. Woulfe. I could not be mistaken. Q. And still you don't know his name? A. He is the same; no, sir; I don't know his name, but this is the man. There are three Irwins. There is a third Irwin in this courtroom, and I don't know his name. I don't know the name of the third one."

[1, 2] A number of notarial acts, executed by Mr. Woulfe in his capacity as, notary and bearing the admitted signatures of the defendants as witnesses, were offered in evidence, and it was admitted by defendants that they were on very friendly terms with Woulfe and had confidence in him at the time of the occurrence to which the foregoing testimony refers. Comparing the alleged signatures sued on with those attached to the acts thus mentioned, a well-known expert in handwriting testified, in quite positive terms, to the genuineness of the signatures sued on. The testimony of Mr. Denechaud that Mr. Edward Irwin, Jr., not only admitted his own signature but also stated that his brother had likewise signed the bond, was reiterated and went in without objection; and, whatever may be the proper interpretation of C. P. art. 325, as construed with C. C. art. 2245, we are of opinion that testimony showing the acknowledgment of an alleged forged signature, when admitted without objection, is to be given the effect to which it would be entitled in any other case, where an acknowledgment is relied on. Chaffe v. Cupp, 5 La. Ann. 684.

We have, therefore, as against the bare denial of the defendants, the testimony to the admission of the signatures by Edward Irwin, Jr., to the fact, which he was unable to deny, and made no attempt to explain, that he visited the office at which the admission is shown to have been made, in the company of Mr. Woulfe; that Woulfe had long been his friend and that he had signed many instruments at his request; and, finally, we have the testimony of the expert, strictly admissible under C. P. art. 325.

Upon the whole, we concur with the judge a quo in the view that plaintiff has successfully carried the burden resting upon her of overcoming defendant's denial of their signatures, and that she is entitled to an affirmance of the judgment that she obtained.

The judgment appealed from is therefore affirmed.