## BROUGH et al. v. PRESIDENTIAL FIRE & MARINE INS. CO.

### No. 16753.

Court of Appeal of Louisiana. Orleans.

Nov. 15, 1937.

896

St. Clair Adams & Son, of New Orleans, for appellant.

J. A. Woodville, of New Orleans, for appellees.

JANVIER, Judge.

James Brough and his wife Clementine were the owners of a dwelling and the furniture and contents contained therein when, on April 27, 1932, both building and contents were totally destroyed by fire. They did not have actual title to the land on which the building was located, but were holding it under a document familiarly known as a "bond for deed," which they had obtained from one Ben L. Lewis on August 16, 1924, and which provided that when they should pay $635 in installments, the said Lewis would deliver to them a good and valid deed. Lewis himself, when he executed the "bond for deed," was not the owner of the property, but later, on October 2, 1925, he acquired title thereto along with many other lots forming a large tract. In acquiring title, he paid $3,000 in cash and granted first mortgage and vendor's lien to secure the balance, $5,850. On March 19, 1932, because of Lewis' failure to pay the amount due to the former owner, a writ of seizure and sale was obtained by the said mortgagee, former owner, and the entire property, including that portion on which plaintiffs' dwelling was located, was seized by the civil sheriff, and, on April 4, 1932, advertised to be sold at foreclosure on May 4, 1932.

Before the sale could be held, to wit, on April 27, 1932, the fire occurred. The insurer, defendant, refused to make payment for the loss of the building, pointing to the fact that plaintiffs did not own in fee-simple the land on which the building had been located, and maintaining that, because of that fact, the contract of insurance had never attached, since in the

policy there was a provision to the effect that: "This entire policy * * * shall be void * * * if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple."

Defendant insurer denied liability for the loss of furniture and contents in any sum beyond $563.80, asserting that to be the full value of said furniture, and deposited that sum in the registry of the court as representing the full extent of its liability.

Plaintiffs, conceding that the building had not been located on land owned by them, contend, nevertheless, that they may recover for the loss of the building because of the effect of Act No. 222 of 1928, which provides: "That no policy of fire insurance * * * shall hereafter be declared void by the insurer for the breach of any representation, warranty or condition contained in the said policy, * * * nor shall any such breach avail the insurer to avoid liability, unless such breach shall exist at the time of the loss and shall be either such a breach as would increase either the moral or physical hazard under the policy, or shall be such a breach as would be a violation of a warranty or condition requiring the insured to take and keep inventories and books showing a record of his business, anything * * * in the policy · * * * of insurance to the contrary notwithstanding."

They maintain that, because of the said statute, an insurer desiring to avoid liability because of the breach of a ·policy condition must show that the facts by which the breach is said to have been caused actually increased the moral or physical hazard.

On the day on which the matter was tried in the court below, the, insurer filed an exception of no cause of action, founding it upon the contention that the allegations of the petition showed that plaintiffs were not the owners of the land on which the building was situated, and that, therefore, Act No. 222 of 1928 had no application, since a proper interpretation of that statute, so exceptor contended, made it inapplicable where the alleged breach .relied upon as a defense was of a condition precedent to the attaching of the policy; that that statute, which provides that an insurer may not, for breach of representation, warranty, or condition, de-

clare void a policy of insurance "unless such breach shall exist at the time of the loss and shall be either such a breach as would increase either the moral or physical hazard under the policy," applies only to a breach which may occur after the policy has attached, and does not have application to a breach of a condition precedent to the actual coming into existence of the policy as a contract, and that, where compliance· with a condition precedent is required by the policy, there must be an allegation of such compliance and proof thereof. Stated differently, the contention raised by the exception is that, in issuing the policy containing the stipulation that it " * · * * shall be void * * * if the subject of insurance be a building on ground not owned by the insured in fee simple, * * * *" the insurer, in effect, made a conditional delivery of the said document with the understanding that it should not come into being as a contract if, as a matter of fact, the building was not so located, and that the act of 1928, on which plaintiffs rely, does not, if properly interpreted and applied, refer to such conditions, but is intended merely to prevent the avoidance for breach of representation, warranty, or condition which occurs after all conditions precedent have been complied with and the policy has actually come into being as a binding contract between the parties.

The exception was overruled and, after trial on the merits, there was judgment for plaintiffs for $1,236.20, which, apparently, included the full amount for which the building had been insured, to wit, $1,000, and $236.20 on the contents, in addition to the amount admittedly due. The judgment also included legal interest and a penalty of 12 per cent. on the total amount, together with attorney's fees, which were fixed at $300. The penalty, interest, and attorney's fees were allowed because of the provisions of Act No. 168 of 1908. The insurer has appealed.

The exception of no cause of action must first be considered. In effect the argument in support of it is that, since an insurance company may not be compelled to issue a policy in the first instance, it may submit, as a potential contract of insurance, a document containing a stipulation that it shall not become a contract unless and until the primary, initial requisite, ownership of the land in fee simple, shall be shown to have been complied with.

Plaintiffs argue that the exception is not well founded for two reasons. First, they say that their ownership and right to possess the land on which the building was located was sufficient to comply with the requirements of the policy; and, second, that, even if not, nevertheless the prohibitory statute applies to all conditions, warranties, and representations, precedent as well as subsequent, and that, therefore, no breach may be availed of to avoid liability unless, by the breach, there was caused an increase in the moral or physical hazard.

■■■ That under the circumstances the plaintiffs did not, in fee simple, own the land on which the building was located, and that, therefore, there was an actual breach of the applicable policy condition, we entertain no doubt.

The "bond for deed" by which Brough and his wife held the land on which they had erected the building shows plainly that it was not a final document transferring ownership from the prior owner to them. It had been executed by one who himself was not the owner of the land, and, in the second place, it provided not that the title was being transferred, but that, if and when payment should be made, the "vendor (bound) himself to execute or cause to be executed * * * a good and valid deed."

There are two cases, both decided by the Supreme Court of Louisiana, which, as we read them, settle this feature of the controversy. In Trichel v. Home Insurance Company, 155 La. 459, 99 So. 403, an owner and former possessor of property brought suit on an insurance policy which contained a provision that the policy "shall be void * * * if the interest of the insured be other than unconditional and sole ownership." The insured had executed a contract under which a third person had agreed to buy the property and to pay for it partially in cash and partially in installments, and under which the purchaser was to have possession at once and under which contract, also, the former owner (insured) agreed "to make warranty deed on being paid said balance." The insurer defended the action for the proceeds of the policy, contending that there had been a sufficient transfer of interest to constitute a breach of the policy condition as to continued ownership and interest of the insured. The court said: "Our conclusion is that any agreement for

the sale of real estate, which is not intended to be the final writing between the parties, but, on the contrary, to be followed by another and final deed, is a mere promise of sale and not a sale, and does not transfer the title to said property; unless it clearly appear that the parties contemplated that the new deed should be only a confirmation of the first, and not indispensable for the transfer of title."

If there the transfer from the insured was not considered sufficient to avoid the policy, surely it cannot be said here that the transfer to the insured under a very similar document can be relied upon as giving to the said insured a title "in fee simple" to the land on which the building was located.

Later, in Campbell v. Richmond Insurance Company, 156 La. 455, 100 So. 679, 680, the Supreme Court considered a case which we cannot distinguish from this. There the insured had purchased under a document practically identical with that involved here. He had gone into possession, and had obtained insurance on a building which he had erected on the land. When the fire occurred, the insurer refused to make payment, maintaining that there had been a breach of the identical condition which is pointed to in the case at bar. The court said:

"The chief defense, and the one sustained by the Court of Appeal, is that defendant did not own, in fee simple, the lot on which the building insured was located, and hence is not entitled to recover the amount of the policy under its terms. * * *

"In our view the contract between plaintiff, in the case at bar, and Bacon & Johns, shows that it was not intended that the contract entered into by them should be the final instrument between them; but, to the contrary, its language unmistakably shows that it was the intention of the parties that a deed should be executed by Bacon & Johns, transferring the lots to plaintiff upon his complying with certain conditions. Hence, under the ruling in the Trichel Case, which is supported by ample authority, the contract, mentioned, is only a promise of sale; and therefore is not translative of property. As the contract was not translative of property, it follows that Bacon & Johns remained the owners of the lot on which the building insured was located. As it appears that they were still such when the policy was issued and when the fire occurred, it follows that plaintiff cannot be

considered at either time to have been the owner, in fee simple, of lot 10."

The Campbell Case arose, as did the Trichel Case, before the enactment of Act. No. 222 of 1928, and, therefore, even without a showing of increase of hazard, the breach was sufficient to avoid liability under the policy.

There was, then, a breach of the policy condition in the case at bar, and if, as insurer contends, the condition was not one contemplated by the statute of 1928, then the insurer may point to the breach as avoiding the policy as a matter of law and need not show that by the breach there was caused an actual increase in the hazard, whether moral or physical.

That in the absence of such a statute such a breach as that which existed here would, ab initio, prevent the attaching of the policy, seems to be well settled. Such a breach is one which exists at the very inception and, in the absence of legislation, such a policy never becomes a contract at all. This was squarely held in this state in Nabors v. Commercial Union Assurance Company Ltd., 125 La. 378, 51 So. 429, 432. There there was a policy provision against other insurance. Since it was shown that there was other insurance when the policy sued on was written, the court said: "We are * * * of opinion that, when the policy * * * was written, the insurance * * * covering the same interest, had not been canceled, and hence that said policy by its own terms was void ab initio, and that there can be no recovery on it."

The statute of 1928 had not then been enacted. The rule contended for by the insurer is well stated in Fraser et al. v. Rogers (Tex.Civ.App.) 56 S.W.(2d) 911, 912: " 'Where a policy is expressly conditioned that it shall be null and void if the interest of the insured be other than unconditional and sole ownership, the required title is a condition precedent to the policy becoming effective. Likewise, a stipulation requiring a fee-simple title to be evidenced by deed is held a condition precedent to the risk attaching. In fact, where the validity of the policy is made to depend upon the insured being the absolute and unconditional owner of the true title to the property insured, fulfillment of the contract is a necessary prerequisite to the validity, and hence to the operative effect of the policy.' 4 Cyclopedia of Insurance Law (Couch) 3182."

In Weed v. London & Lancashire Fire Insurance Company, 116 N.Y. 106, 22 N.E. 229, 231, we find again the view of the insurer well expressed:

"This condition as to the ownership of the property was precedent to the attaching of the risk, and, as Richards' estate had no title it was broken on delivery of the policy. Upon this point of the case, therefore, the plaintiff failed to prove a valid contract, and was not entitled to recover. * * *

"It is well to bear in mind, in discussing the waiver * * * that the condition in the policy with reference to the statement therein of the title or interest of the assured was one precedent to the attaching of the risk. It lay at the threshold of the contract, and if not then performed, or then obviated, there was no enforceable agreement. The delivery of the policy and the breach of the conditions were concurrent acts, and, if the assured had not the sole and unconditional ownership of the property at the moment the policy was delivered, the condition was broken, and the insurance was void."

In Evens v. Home Insurance Company of N. Y. (Mo.App.) 82 S.W.(2d) 111, 117, the court said: "Therefore if the declaration of plaintiff's interest in the car to be that of 'unconditional and sole lawful ownership,' as evidenced by her acceptance of the policy containing that provision, was not true, then for that reason the policy was void ab initio. Therefore, no subsequent change in the character of plaintiff's interest in the car, even though enlarged to the status of 'unconditional and sole lawful ownership,' could have put life into the dead policy without defendant's consent, and the record is barren of any proof of such consent."

In Matthie v. Globe Fire Insurance Company, 68 App.Div. 239, 74 N.Y.S. 177, 178, affirmed, 174 N.Y. 489, 67 N.E. 57, the court said: "This condition as to the ownership of the property was precedent to the attaching of the risk, and, as plaintiff had no title to the real estate on which the building was located, it was broken upon the delivery of the policy. Upon this point of the case, therefore, the plaintiff failed to prove a valid contract, and was not entitled to recover."

To the same effect, see Banco De Sonora v. Bankers' Mutual Casualty Company

(Iowa) 95 N.W. 232, 234, in which appears the following: "It is a condition precedent to the risk attaching at all, and to be performed before policy takes effect with respect to the property to be insured. To hold that it might be waived, as contended, would be tantamount to declaring that recovery might be had in the absence of a contract."

Mr. Richards, in his work on the Law of Insurance (1932 Ed.), discusses various clauses common to insurance policies, and states that the clause requiring unconditional ownership is "reasonable and valid and a fulfillment of its terms is declared to be a condition precedent to any right of recovery * * *" (chapter XII, § 240, p. 372), and, in referring to the clause with which we are concerned, requiring ownership in fee simple of the land on which the insured building is located, he says (page 377) that this clause is similar to the last and must be similarly construed.

Mr. Cooley, in his Briefs on Insurance, volume III, page 1915, says: "In view of the essential characteristics of conditions precedent, it is elementary that a breach of such a condition avoids the policy absolutely."

There is a universal rule that, where there is such a breach as avoids the policy ab initio, no part of the premium has ever been earned and all must be returned to the insured. In Waller v. Northern Assurance Company, 64 Iowa 101, 19 N.W. 865, 866, this right is correctly stated to be "based upon the fact that the policy was void ab initio." The court further said: That "the action is not based on the policy; indeed, it is founded on the fact that the policy was void ab initio—that there was in effect no policy." This rule was recognized in this state in Campbell v. Richmond Insurance Company, supra, for there the court ordered the return of the entire premium.

But plaintiffs nevertheless assert that where there is a statute which provides that where the policy is once issued there may be no avoidance for breach unless from the breach there has resulted an increase in hazard, if liability is to be avoided such increase must be shown, and they show that the statute involved here contains not only the words "representation" and "warranty," but also the word "condition," and that the statute makes no distinction between conditions precedent and conditions subsequent, and they argue, therefore, that, whatever may be the nature of the warranty or of the representation or of the condition, whether precedent or subsequent, the breach may not be availed of by the insurer in the absence of increase in hazard.

The defendant cites further cases in which statutes similar to that involved here were relied upon by claimants under policies, and in each of which it was held that the statute had no application. And in those cases there is much from which the insurer may take comfort.

In oral argument counsel for plaintiffs contend that those cases are distinguishable, in that in them the violation relied upon was not of a policy provision, but was, rather, the untruthfulness of a statement made in the application.

However, of the cases cited in connection with this issue, only one involves statements made in the application. In Hurt v. New York Life Insurance Company (C.C. A.) 51 F.(2d) 936, it is true that the statement alleged to be untrue and relied upon was contained in the application for the policy, and that the case did not involve the breach of a condition of the policy itself. However, in all of the others policy provisions were involved.

In Ballard v. Globe & Rutgers Fire Insurance Company, 237 Mass. 34, 129 N.E. 290, the policy condition was that the insured must be the sole and unconditional owner. The insured was not the owner. According to the decision, the statute involved provided that: "No * * * misrepresentation or warranty made in the negotiation of a contract or policy of insurance by the assured or in his behalf shall be deemed material or defeat or avoid the policy, or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive or unless the matter misrepresented or made a warranty increased the risk of loss." (Note the absence of the word "condition"). St.Mass. 1907, c. 576, § 21.

The court held that the statute had no application to the condition relied upon by the insurer.

In St. Paul Fire & Marine Insurance Company v. Culwell (Tex.Com.App.) 62 S.W.(2d) 100, is found a case in which the policy condition alleged to have been breached was the same as that which is before us. The court held that its violation effected the avoidance of the policy, although the statute read as follows: "Any provision in any contract or policy of insurance issued or contracted for in this

State, which provides that the answers or statements made in the application for such contract or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable." Rev.St.Tex. 1925, art. 5043.

In Fondi v. Boston Mutual Life Insurance Company, 224 Mass. 6, 112 N.E. 612, 613, there was considered the effect of a statute somewhat similar to our statute of 1928. It provided that: "No * * * warranty made in the negotiation of a * * * policy of insurance by the assured * * * shall be deemed material or defeat or avoid the policy * * * unless * * * made with actual intent to deceive or unless the matter * * * made a warranty increased the risk of loss." St. Mass. 1907, c. 576, § 21. There was a condition in the policy (life insurance) that the insured should be in sound health on the date of the policy. This condition was unquestionably breached. The court said that the statute had no application to the breach of the condition precedent, but based the decision apparently on the fact that the statute referred only to warranties and not to conditions. The court said: "The distinction between a warranty and a condition precedent in connection with a contract is plain."

Obviously, had the statute read "no condition, representation or warranty," etc., then the court could not have reached the conclusion that it did reach, since it based that conclusion on the fact that the statute referred only to warranties, whereas the breach relied upon was of a condition precedent.

In Harvey v. Pawtucket Mutual Fire Insurance Company, 250 Mass. 164, 145 N.E. 35, 36, the court said: "The defect in plaintiff's title went to the essence of the contract of insurance and the policy under its conditions never took effect. * * * The provisions of St.1907, c. 576, § 21, now G.L. c. 175, § 186, are not applicable where as here sole and unconditional ownership is a condition precedent to the creation of the alleged contract."

The statute referred to applied only to "misrepresentation" or "warranty," not to "condition." It reads in part as follows: "No oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance * * * shall be deemed material or defeat or avoid the policy * * * unless the matter misrepresented or made a warranty increased the risk of loss."

We give consideration to Act No. 105 of 1898, § 22, as amended by Act No. 255 of 1914, § 1, which, in part, reads as follows: "Where it is stipulated in this policy, that, without the consent of the insurer endorsed hereon or added hereto, the breach of a condition shall avoid the policy, it shall be held such breach does not in fact avoid the policy, but only suspends the operation of the policy during the time the breach continues."

But that statute has little application and throws little light on the subject. It provides that, if a policy contains a provision under which a breach of condition shall avoid the policy, there shall not result a complete avoidance, but merely a suspension so long as the breach exists. Here the breach continued to the very moment of the loss, and, but for the effect of Act No. 222 of 1928, there could be no recovery regardless of whether or not there had been an increase in hazard, for it would make no difference whether the policy, by the breach, had been completely avoided, or had been merely suspended during the existence of the breach. In either case there would have been no protection, since the breach existed at the moment of the loss.

It may be argued that it was the purpose of the framers of that statute to prevent the complete avoidance of the policy for breach of any condition, but if the word "condition," as contained in the Act of 1914, be interpreted as counsel for defendant would have us interpret the same word in the Act of 1928, then the same argument which is made now could still be made, and it would not be defeated by the consideration of the Act of 1914. In fact, it might be said that there can be no suspension of the operation of a contract until the contract has come into existence, and that, therefore, the framers of the statute did not intend it to apply to those conditions which would prevent the contract from ever coming into being. We interpret, however, the word "condition" as we have interpreted it in the statute of 1928.

We conclude that, though there is much in the cases involving similar statutes to

give color to the defendant's contention, that such statutes do not prevent the avoidance of such a policy for the breach of a condition subsequent, the results in those cases were reached because of the wording of the respective statutes which were involved, in which it was provided that breaches of "warranties" might not be availed of, but in which no mention was made of "conditions." But the Louisiana statute does contain the word "condition," and it makes no distinction between conditions precedent and conditions subsequent, merely providing that no breach of any condition may be relied upon in the absence of an increase of moral hazard.

The distinction between a warranty and a condition precedent is recognized by all of the text-writers; Mr. Couch, in his Cyclopedia of Insurance Law, volume IV, § 860, page 2829, stating: "Perhaps the best recognized distinction between warranties and conditions precedent is that the latter call for the performance of some event after the terms of the contract have been agreed upon, before the contract shall take effect—that is to say, the contract is made in form, but does not become operative as a contract until some future specified act is performed, or some subsequent event transpires; whereas a warranty, notwithstanding the fact that a breach thereof forfeits the contracts, lacks this essential element of a condition precedent, in that it contains no stipulation that an event shall happen or act be done, after the agreement is made in form, before it shall take effect as a contract. Stating it another way, a distinction exists between a warranty and a condition precedent, in that the former does not suspend or defeat the operation of the contract, but a breach affords either the remedy expressly provided in the contract, or that furnished by law; while the latter is one without the performance of which the contract, although in form executed by the parties, and delivered, does not spring into life; in other words, a condition precedent is a limitation to the attachment of the risk, whereas a warranty does not necessarily have that effect."

Mr. Richards, in his work, to which we have already referred, shows that, whatever may be the distinction between a condition and a warranty, if such a statute as that of 1928 refers to conditions, there is included in the prohibition of the statute all conditions precedent, as well as subsequent. After stating, in section 102, on pages 167 and 168, that "the distinction between a warranty and a condition precedent is plain," Mr. Richards, in section 103, continues: "In those states where remedial statutes applying to warranties include conditions precedent as well, there is little difficulty. In the states, however, where the remedial statutes are silent as to conditions, it has been held that the statutes did not embrace conditions but applied only to warranties."

In Corpus Juris, volume 32, page 1277, is found a statement that: "A statute fixing the effect of warranties made in the negotiation of a policy of insurance is not applicable when a condition precedent to the becoming effective of the policy is not performed."

Apparently there is indicated here a distinction between a warranty made in inducing the issuance of a policy and a condition contained in the policy itself, and, if there is a distinction, then a statute, like ours, fixing the effect of conditions as well as of warranties, should be applicable to conditions precedent.

In Louisiana is found a case in which, very evidently, the contention made here was not presented, but in which the facts raised the exact question of law, though neither counsel referred to it; Knowles v. Dixie Fire Insurance Company, 177 La. 941, 149 So. 528, 530. There the policy provision was that it should be void * * * "if the subject of insurance be personal property and be or become encumbered by a chattel mortgage." It was shown that there had been a violation of that provision in that, at the issuance of the policy, there existed a chattel mortgage on the property. The insurer resisted not on the ground urged here, that such a statute has no reference to conditions precedent, but solely on the contention that where, as a matter of fact, there was such an incumbrance, there resulted, as a matter of law, an increase in the moral hazard. But there the court held that there must be shown facts from which might be drawn the conclusion that there had resulted an increase in the hazard, and that those facts must be in addition to the fact relied upon as showing the breach of the condition.

Therefore, since the question was not there raised, that case cannot be considered as decisive of the issue as to whether the statute of 1928 contemplates within its inhibition a condition precedent. Nevertheless, the facts presented that issue, and we note language in the decision from which may be eked out the intimation that, possibly, the Supreme Court gave to it at least

a passing thought. The court said: "Under the law as it now exists in this state all the clauses in the policy, whether relating to representations, conditions, or warranties; * * * are modified by Act No. 222 of 1928 to this extent, that the violation of them is not a defense unless it be shown * * * that such breach shall exist at the time of the loss, and shall be such a breach as would increase either the moral or physical hazard."

Furthermore, the court apparently considered that it mattered not whether the property was already mortgaged when the policy was issued, or whether the mortgage was subsequently executed; "The fact alone that the personal property covered by the policy is or becomes encumbered * * * does not of itself void the policy."

We direct attention to the significant words "is or becomes."

Our conclusion is that, since Act No. 222 of 1928 includes all conditions, warranties, and representations, regardless of whether they involve precedent situations or subsequent violations, the statute is applicable and prevents the avoidance unless there has resulted, by the breach, such a situation as would increase the moral or physical hazard. We therefore conclude that the exception must be overruled.

Before considering whether there has been an increase in the moral hazard, we must dispose of the argument that the pleadings do not authorize us to consider that defense; that the defendant has pitched its entire case on the contention raised by the exception and has not put at issue the question of whether, from the breach, there has resulted such a situation "as would increase, either the moral or physical hazard. * * *"

We find in the answer an allegation that the particular condition referred to was breached, and that therefrom there resulted the avoidance of the policy. The averment reads as follows: "That defendant herein expressly pleads the condition of the policy contract hereinabove quoted and alleges that by its violation said policy contract is null, void and of no effect."

We interpret that answer as putting at issue the question of increase of hazard since, as a matter of law, the answer could have no other effect. Since the exception is not well founded, the only effect of the above-quoted provision of the answer is to put at issue the facts from which an increase in hazard is claimed to

have resulted. If the answer is vague to such an extent as to prevent the introduction of evidence in support of it, then objection should have been resorted to to exclude that evidence.

Counsel for plaintiff insists that the evidence relied upon as showing an increase in the moral hazard may not be considered in connection with this defense, and should not be looked upon as enlarging the pleadings because they contend that it was evidence admissible upon another branch of the case, and that, even if, generally speaking, evidence admitted without objection may be treated as having enlarged the pleadings, this effect does not result where the said evidence was admissible on some other issue. They cite our decision in Templeman Bros. Lumber Company, Inc. v. Sinnot, 9 Orleans App. 305, in which we said: "It is unnecessary to determine whether this defense is in fact established, for the evidence received was admissible on other issues between the sundry parties to the litigation and consequently its admission without objection did not have the effect of enlarging the pleadings."

But here we find that, though the evidence as to the value of the building was necessary on other issues, practically all of the remaining evidence had no bearing on the issues raised by other portions of the pleading. The evidence as to the foreclosure, as to the balance due on the land, as to the fact that plaintiffs were in arrears, and as to the fact that plaintiffs had lived in the house alone and had left it in the evening, none of these matters were involved n the plaintiffs' case, nor in the defense raised by the exception of no cause of action.

Counsel also argue that there is no authority for the view that the pleadings of a defendant may be so enlarged and they contend that it is only the plaintiff who may take advantage of such evidence for the purpose of enlarging the pleadings. But the authorities are overwhelming that a defendant, as well as a plaintiff, may enlarge the issues by evidence admitted without objection. On the doctrine of enlargement of pleadings by evidence, there are two very late cases: Ducote v. Ducote, 183 La. 886, 165 So. 133, and Daugherty v. Canal ,Bank & Trust Company, 180 La. 1003, 158 So. 366. In Harper v. Noble, 11 La.App. 159, 123 So. 171, we said: "The evidence as to want of consideration was introduced without objection and we see

no reason why the position of defendant, assumed in his pleadings, should not be changed by evidence not objected to."

In Madison v. Jackson, 14 La.App. 279, 131 So. 736, 737, is found the following:

"In his answer defendant denied articulately the allegations of petition as to her services, but in the trial of the case he attempted without objection to prove payment.

"The evidence had the effect of enlarging the pleadings. Wykoff v. Miller, 48 La. Ann. 475, 19 So. 478; Young v. T. & P. Ry. Co., 51 La.Ann. 295, 25 So. 69; Blackburn v. La. R. & N. Co., 128 La. 319, 54 So. 865; O'Reilly v. Irwin, 143 La. 81, 78 So. 245; Freiler Merc. Co. v. Chaney, 146 La. 138, 83 So. 436."

We conclude that the issue of whether or not the facts were such as would increase the moral hazard may be considered either because it is actually raised by the pleadings, or because those pleadings have been enlarged by the admission of evidence without objection.

We find in the record, and without objection, all the essential facts upon which that factual defense is pitched, and that the facts must be considered is definitely held in the Knowles Case, supra, for there the court carefully considered such facts as it thought might have bearing on the issue, showing that the amount of the insurance, the value of the property destroyed, the amount of the mortgage and such other circumstances as might have bearing on the incentive of the insured to protect his property, or on whether or not he will be benefited in a pecuniary way by its destruction, must all be considered in determining whether the circumstances are such as would increase the moral hazard. There the court said: "The moral hazard is least when the pecuniary interest of the insured in protecting it is greatest. It is greatest when his pecuniary interest is such that he might gain most by burning it. While the confession may be a sad commentary on human nature, yet it is a fact known to all that men's pecuniary interests do sometimes influence their conduct even to the extent of burning their own property in order to collect insurance policies."

In Tulane Law Review, volume VIII, page 307, in an article entitled "Insurance—Warranties and Representations * * * Moral Hazard," appears the following: "The majority view * * * seems to be that whether the representation is material to the risk, or the breach thereof increases the risk, is a question of fact."

Here the first fact is that on which is based the charge that the condition has been breached; that the building was on land not owned by the plaintiffs. The second fact is that it was insured for the full amount of its cost, to wit, $1,000. The plaintiffs so testified. Another and a most important fact is that not only was the land mortgaged, but that the mortgage was being foreclosed at the time of the loss. Still another fact is that plaintiffs, eight years after they obtained their "bond for deed," still owed about one-half of the agreed purchase price and were two months in arrears in their monthly installments. Whatever may have been their rights as against Lewis, it is obvious that they, in arrears in their payments, knowing that the land did not belong to them and that foreclosure proceedings were pending, would feel that from the foreclosure would result the entire taking away from them of their building; that the purchase of the land by some one else would, at best, make it necessary that they move the building, which would entail, of course, considerable expense, and would also make it necessary that they purchase land somewhere else to which the building might be moved. We do not wish to be understood as holding that they were actually in any way involved in the burning of the building, but the fact that, in such circumstances, they would benefit pecuniarily by such an event, shows that because of their failure to own the land the moral hazard was substantially increased.

Surely it cannot be said that, for a defendant insurer to successfully resist on the ground of increase in moral hazard, there must be proof that the particular insured was actually tempted to destroy his property, because, if such proof were required, it is obvious that in almost no case could such fact be shown. If that was the intention of the framers of the statute, the proof required would necessarily be practically sufficient to convict on a charge of arson. The statute itself does not say that there must be an actual increase in the moral hazard, but that the facts must be such as "would" ordinarily increase the hazard. We take it to mean that all that is necessary is that the evidence shall show facts which, not taking into consideration the personal integrity of

the individual insured, would, in the ordinary case, create in the insured satisfaction with destruction by fire. If the result would create in the ordinary individual such a sense of satisfaction, then the moral hazard has been increased.

In the same article of the Tulane Law Review, referred to above, reference is made to many cases, in each of which it was held that there had been an increase in the moral hazard, and it is said that: "Since the increase in risk in the above cases was not an increase in physical risk but resulted from the insured's diminished interest in the insured property, it seems patent that it was equivalent to an increase in moral hazard."

That facts substantially similar to those shown here are sufficient to warrant a finding that there woud be an increase in the moral hazard was held by our brothers of the Second Circuit in Wilson v. Aetna Insurance Co., 161 So. 650, 653, wherein, finding a situation in which an insured owned a building on land not owned by her and from which she found herself compelled to remove it, the court said: "Where ownership is not absolute, a situation might arise wherein the moral hazard is materially increased. No better illustration of this could be given than that presented herein: Because of her limited ownership, we find the plaintiff ordered to remove the insured houses from the lots on which they are situated. She has no other property upon which to place them; she has no means to purchase any; she is threatened with the complete loss of property, insured for $1,500 at a time when her cash reserve was reduced to five or six dollars."

It may be argued that the hazard in such circumstances as exist here is increased not by reason of the fact that the insured did not own the land on which his building was located, but because of the failure of the mortgagor to pay his debt to the mortgagee. But the fact remains that had the insured owned the land, no such condition as that which arose here could have arisen, and it therefore follows that the foreclosure is a fact which shows that, by reason of the non-ownership of the land, the moral hazard was increased beyond that which is normal whenever a fire insurance policy is issued.

It is not the mortgage which is pointed to as a breach of condition. That is not the breach relied on at all. It is the fact that the building was located on land not owned

in fee simple by the insured. There is no doubt whatever that that condition was breached. The only question involved is whether, from the breach, there resulted an increase in hazard, and we feel that under the attendant circumstances, one of which was the fact that a mortgage was about to be foreclosed, the hazard was increased.

■ We next consider the question of what amount should be allowed to cover the loss sustained by the furniture and contents of the building. The policy, on this item, was limited to $800, and defendant, admitting a loss to the extent of $563.80, has deposited that sum in the registry of the court and maintains that plaintiffs have not proven this loss to be greater than the said amount, and that, therefore, the recovery should be limited to that figure, without penalty and without allowance for the fee of the attorneys. Plaintiffs, however, assert that the loss has been shown to be in excess of the policy limit and they point to allegation 12 of the answer, in which defendant states that, after the loss, its experts " * * * estimated the sound value of the contents at Thirteen hundred fifteen and 95/100 ($1315.95) Dollars, * * *" and, also, they show that the only evidence in the record as to the extent of the loss, that is to say, whether it was partial or total, is to the effect that it was total, and they argue that if the loss was total and if the prior sound value was more than $1,300, the full face amount of the policy should be recovered. It is true that defendants allege that the loss sustained by the contents did not exceed the amount deposited, but it has offered no evidence to sustain this figure, and none to show that the loss was not total. Therefore, we feel that it is bound by its admission as to the sound value and by the unrebutted evidence as to the completeness of the loss.

■ We recognize the fact that the valued policy law, Act No. 135 of 1900, has no application to insurance on movable property, for, in Tedesco v. Columbia Insurance Company, 177 La. 142, 148 So. 8, 9, the Supreme Court of this state said: "The plaintiff further contends that the policies were valued policies under the provisions of Act No. 135 of 1900, and that upon proof of loss the values fixed in the policies become absolutely due in their entirety, and that no further proof is necessary. This argument would be perfectly sound if, as a matter of fact, the policies were valued policies, but, inasmuch as the items in dispute

were items covering movable property, which were not in any sense immovable by nature, and which by their character were incapable of being made immovable by nature, they did not and could not come within the provisions of Act No. 135 of 1900, as that statute only covers property which is immovable by nature."

■ Therefore, while it is true that the burden rested upon plaintiffs to prove the extent of their loss, we feel that they have shown that loss to be not less than $800, and that, therefore, they are entitled to recover that amount, less, of course, what has already been paid.

■ We next consider the contention of defendant that no penalty should be assessed and no attorney's fees awarded under the provisions of Act No. 168 of 1908, because of the asserted failure of plaintiffs to make prior demand for payment under the policy. The Act of 1908 makes demand a prerequisite of recovery of the said penalty and attorney's fees, and, if. there was no demand, then there can be no recovery on these items, for, in Tedesco v. Columbia Insurance Company, supra, the court said: "As demand is made a prerequisite to the right to recover the penalties, the failure to make demand precludes their recovery."

■ But here the answer of defendant contains two admissions to the effect that demand was made, for defendant admits the allegations of article 10 of the petition, which states that "petitioners aver amicable demand in vain," and, in response to plaintiffs' allegation in article 5, "that they at once notified the agents of the insurance company and that they have failed to pay the amount due under the terms and conditions of the said policy," appears the following answer: "That defendant admits that it received notice of the aforesaid fire and defendant admits that it has not paid the amount claimed by the plaintiffs. * * *"

We conclude that under the statute there must be an allowance, for section 3 reads, in part, as follows: "Should the company fail to pay, within the said time the amount due the insured under the policy after demand made therefor, such company shall be liable to pay the holder or holders of such policy in addition to the amount of the loss, 12 per cent damages on the total amount of the loss as may be determined by a court of competent jurisdiction together with all reasonable attorney's fees for the prosecution and collection of such loss."

■ Our attention is called to the fact that the penalty of 12 per cent. is assessed not only on the principal amount of the judgment, but also on the interest. Obviously, this is not authorized by the statute, which provides that the penalty of 12 per cent. shall be based "on the total amount of the loss."

■ The sum allowed as attorney's fees, $300, is reasonable in view of the intricate issues involved, the importance of the principles considered, and the ingenuity and industry displayed.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is amended by the reduction thereof to the principal sum of $800, with legal interest from judicial demand, together with 12 per cent. on the principal sum as damages, and also for attorney's fees in the sum of $300, all subject to a credit of $563.80 already deposited in the registry of the civil district court for the parish of Orleans.

And it is further ordered that, as thus amended, the judgment be, and it is, affirmed; plaintiffs to pay costs of appeal, and all other costs to be paid by defendant.

Amended and affirmed.

WESTERFIELD, Judge (dissenting in part).

The policy sued on is what is known as the New York Standard Form of Fire Insurance, which is the only form of fire insurance policy permitted in this state, Act No. 105 of 1898, § 22, as amended by Act No. 255 of 1914, § 1. The latter act contains the following proviso: "Where it is stipulated in this policy, that, without the consent of the insurer endorsed hereon or added hereto, the breach of a condition shall avoid the policy, it shall be held such breach does not in fact avoid the policy, but only suspends the operation of the policy during the time the breach continues."

The defendant's policy contains the proviso as required by the Act of 1914. One of the suspensive conditions in the policy relates to the ownership of the property, which must be "unconditional and sole ownership" to prevent the interruption of coverage by the insurer. The argument of counsel concerning the breach of conditions precedent and conditions subsequent having the effect of rendering the policy void or voidable would appear groundless in view of the statutory and policy provision to the effect that such breach shall only suspend the operation of the policy.

The majority opinion holds that the suspension of the policy because of the breach of the condition concerning ownership was not sufficient in and of itself to prevent recovery, and, therefore, the case could not be disposed of on the exception of no cause of action. However, it is said that such breach has increased the moral hazard because there was a mortgage on the property which was subsequently foreclosed. I concede that the preponderance of the authority is to the effect that a mortgage increases the moral hazard. However, see our opinion in Peterson v. Pacific Fire Insurance Company, 148 So. 283. Our Supreme Court has held that the question is one of fact to be determined in each case. Knowles v. Dixie Fire Ins. Co., 177 La. 941, 149 So. 528. But whether the mortgage increased the hazard or not, there is, in this case and in this policy, no provision, warranty, or condition relating to a mortgage for the breach of which the hazard may be said to have been increased. There is a clause in the policy which declares that "if the subject of insurance be personal property and be or become encumbered by a chattel mortgage" the policy shall be void (suspended). In this case the subject of insurance is not personal but real property, hence the policy provision concerning incumbrance, present or future, does not appear.

For these reasons I cannot agree with that portion of the majority opinion which holds that plaintiff may not recover for the loss of his dwelling, and, to that extent, respectfully dissent.