## WILLIAMS v. FIRE ASS'N OF PHILADELPHIA.

No. 6020.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 3, 1939.

Irion & Switzer, of Shreveport, for plaintiff-appellant-appellee.

Coleman & Morgan, of Shreveport, for defendant-appellant-appellee.

TALIAFERRO, Judge.

Defendant insured the household goods and personal effects of plaintiff against loss and/or damage from fire, to the amount of $750. On October 29, 1938, while the policy contract was in force, plaintiff's residence, wherein the insured property was located, was discovered on fire from within. Prompt action of firemen extinguished the flames before much of the building had been consumed. Some of the household effects were totally destroyed; some were only slightly damaged, while others escaped any injury whatever. Being of the belief that the fire was incendiary and that plaintiff was responsible for or authorized it, defendant refused to settle for the loss.

This suit was instituted to recover the face amount of the policy, plus the statutory penalty of 12% and counsel fees as is provided by Act No. 168 of 1908.

Plaintiff's demand is primarily resisted on the ground that he, through his wife, acting as his agent, set fire to or caused to be set on fire, the residence and the personal property covered by the policy for the purpose of collecting the insurance thereon. This is a special defense, proof of which rests upon defendant.

It is further pleaded that the actual loss and damage resulting from the fire was much less than the amount sued for. Proof of extent of loss was the burden of plaintiff.

There was judgment for plaintiff for $157.50, plus 12% thereof as penalty, and for $50 additional as attorney's fee. Both plaintiff and defendant prosecute appeal therefrom.

The insurance in question was effected in July, 1937.

Plaintiff was sentenced on February 26, 1938, to serve 18 months in the United States Southwestern Reformatory at El Reno, Oklahoma, for violating the Federal Postal laws. His wife was left in charge of their home and the effects therein, and continuously lived there until the time of the fire. He was released on parole on November 23, 1938. He was not allowed to leave prison during the term of his service, nor did his wife visit him there. Mail sent out and that received by him was strictly censored by prison authorities. No conversation with others was allowed, save in the presence and hearing of some person connected with the reformatory, therefore, it was humanly impossible for plaintiff to have personally set fire to his residence and its contents. It is almost as equally conclusive that he had no opportunity to secretly authorize or suggest to his wife or any other person that she or they do so.

There is no doubt that the fire was of incendiary origin. The contents of a rear room were entirely destroyed and therein the fire had made its greatest progress. Several pieces of loose paper had been placed on as many articles of furniture and set on fire. These had been totally consumed with little damage to the furniture on which they were placed. Firemen found all doors of the building locked and the windows latched or bolted. Whoever actually started the fire took care to leave the building closed to anyone except by the use of keys or force.

Plaintiff's wife slept in the building the night preceding the fire. A negro boy, a lodger, also slept therein that same night. Each was employed in the business section

of the City of Shreveport, several minutes' distance from plaintiff's residence, and each, the testimony satisfies us, was engaged in the performance of his or her respective duties when the fire was discovered, and had been so engaged for several hours prior thereto. It is reasonably certain that neither of these persons actually set on fire the insured effects. Even though we should find and hold that either did start the fire or cause it to be done, defendant thereby would not be absolved from responsibility for the ensuing loss, unless it should also appear that plaintiff counseled, suggested or authorized their illegal action. And, as heretofore said, it is made quite certain he did not do so.

A strong suspicion arises from the facts and circumstances of the case, that plaintiff's wife knew more about the origin of the fire than she was willing to admit, and if she possessed such knowledge, of course, the conclusion would be irresistible that she had it done for the purpose of gain.

It is proven that plaintiff's wife, from funds sent to her by him after he began his prison term, paid monthly installments due the carrier of a large mortgage on the family home, which was also heavily insured; paid balances due on furniture and on an automobile, and in all needed ways acted as his agent with regard to the preservation of their property. From these established acts of agency, it is argued that the wife, in furtherance of such agency, committed or caused to be committed, the arson under discussion.

■ No inference arises from a lawful relation of principal and agent that the latter is authorized to perform unlawful acts from which the former may directly or indirectly benefit. Such relation is one of trust and fidelity and will not be extended to embrace, in the absence of very strict proof, deeds unlawful and/or criminal from their very nature. And because the agent happens to be the insured's wife does not affect the rule in such cases. Anent this issue 14th R.C.L., page 1223, verbo Insurance, says:

"If, however, the insured was insane when he destroyed the property a recovery may be had, and the fact that the property was intentionally burned by the insured's husband, wife or agent does not defeat a recovery, where the insured was not a party thereto." James F. Henderson et al. v. Western Marine & Fire Insurance Company, 10 Rob. 164, 43 Am.Dec. 176; Walk-

er v. Phoenix Insurance Company, 62 Mo. App. 209; Perry et al. v. Mechanics' Mutual Insurance Company, C.C., 11 F. 485.

■ Defendant failed to establish its special defense.

As to the value of the insured effects destroyed, and extent of damage to others, much difficulty arises. Plaintiff fairly well proved the cost to him of each article or set of articles involved, but, in the main, did not prove their value immediately prior to the fire. Some of these household effects had been in use for eleven years or more, while others were not nearly that old. Of course, the cost of such chattels may not be safely accepted as a criterion of value in determining the loss sued for.

■ The trial judge, in a very painstaking manner, which he reduced to writing, has analyzed the testimony bearing upon the extent of plaintiff's loss. We have studied same in the light of the evidence, and are convinced that his conclusions on the question are as nearly correct as is possible to arrive at, all things considered. We quote with approval the following, taken from the lower court's opinion, to-wit:

"The quantum of damage is rather hard to estimate from the evidence in the record. Plaintiff testifies that he purchased the household goods over a period of eleven years, and that they cost him between Eighteen Hundred and Two Thousand Dollars, and we think that this is approximately correct from the invoices of some of the articles, which were filed in evidence, but the plaintiff nor his witness, W. M. Burgess, did not attempt to fix the amount of damage done by the fire, the latter confining his testimony to the value of the articles of furniture as they existed after the fire, and which value he fixed at $118.25.

"Defendant, on the other hand, presented Mr. Levy, a dealer in second-hand furniture, who testified that he examined the furniture in the house and was able to place a value on it as it existed before the fire, and the amount that it would take to restore it to the condition it was in before the fire. Mr. Levy placed a value on the furniture of approximately $321.00, as before the fire; approximately $71.00 of damage, which would leave a present value of approximately $250.00, as against $118.25, fixed by Mr. Burgess. Neither of these figures has reference to the articles destroyed in the back bedroom. We will take

a few of the articles and compare the testimony of Mr. Levy and Mr. Burgess, bearing in mind that Mr. Burgess fixed only the present value of each article, without reference to any fire damage, and we have fixed the present value of each article described by Mr. Levy by taking his estimated value before the fire, and deducting therefrom the fire damage, if any, to arrive at the present value as if fixed by him.

| | Levy | | Burgess | |
|---|---|---|---|---|
| | Before Fire | Dam- age | Pres. Val. | Pres. Val. |
| 3 Pc. Living Room Suite ($103.85)..... | $45.00 | $30.00 | $15.00 | $12.50 |
| 4 Pc. Bedroom Suite ($118.50)..... | 59.50 | 15.00 | 44.50 | 10.00 |
| 1 Beauty Rest Mattress .......... | 15.00 | None | 15.00 | 6.00 |
| 1 Victrola ($175.00) | 10.00 | None | 10.00 | 5.00 |
| Jewel Range ($89.- 50) .................. | 39.50 | 5.00 | 34.50 | 10.00 |
| 1 #12 Springs..... | 4.00 | None | 4.00 | 3.00 |
| 1 Refrigerator ($98.00) ............ | 12.50 | 2.50 | 10.00 | 7.50 |
| 1 OC L. R. Table.. | 5.00 | 1.00 | 4.00 | 2.50 |
| 1 K. Cabinet...... | 15.00 | 3.50 | 11.50 | 7.50 |
| 2 Wardrobe Trunks ($50.00 each)....... | 20.00 | None | 20.00 | 10.00 |

"In an action on a fire policy, insured has burden of proving the extent of loss of furniture. Brough v. Presidential Fire & Marine Insurance Company, La.App., 176 So. 895, 896. Plaintiff, in the case at bar, proved the costs of his furniture and household goods to have been over $1800.00, and the present value to be $118.25, and this latter figure, as fixed by Mr. Burgess, was arrived at without regard to the amount of damage, if any, to the article. Plaintiff is not entitled to recover, as damage, the cost price of the article. The testimony shows that only the property in the rear bedroom was destroyed, and the value of this, as fixed by Mr. Levy, was $24.00. Plaintiff has contented himself with establishing the cost price and the present value of all furnishings remaining in the house, without showing the damage sustained. We cannot assume that a phonograph purchased in 1928 for $175.00, and now valued by plaintiff at $5.00, and by defendant at $10.-00, which was not damaged in the fire, establishes a 'fire loss' of $165.00 or $170.00; or that a Beauty Rest mattress purchased in 1933 for $39.50, which plaintiff now values at $6.00, and defendant valued at $15.00 (with no .repairs required) establishes a fire loss of $33.50, or any other amount.

"Taking into account that Mr. Burgess valued all of the property without reference to any fire damage, which value is much less than that fixed by Mr. Levy, who states that no repairs on certain of the articles are required, leads to the conclusion that plaintiff's property, as a whole, was very much depreciated in value. Take the 'day bed' purchased in 1927, at a cost of $48.00, which Mr. Burgess now values at $7.50, and defendant $12.50, with no repairs required due to the fire, shows that the present value of the articles is not necessarily due to the fire damages.

"Mr. Levy refers to amounts necessary to repair certain articles, and the value of the destroyed articles, however, knowing that where a fire occurs there is bound to be some water and smoke damage, which may have entered into consideration by Mr. Burgess in fixing lower values than Mr. Levy, who estimates the costs of the repairs to be $92.50.

"We will arbitrarily divide the difference in the estimate of the present value of the articles as fixed by these witnesses, which is $65.00, and add to the costs of the repairs of $92.50, and arrive at the sum of $157.50, as the amount of damage due to the fire."

Defendant does not seriously challenge the correctness of the amounts the lower court condemned it·to pay, if it be held that the special defense tendered herein has not been sustained.

■ Plaintiff argues that the amount of attorney's fee allowed him is inadequate. In view of the amount of recovery, we think the fee sufficient.

■ Plaintiff also complains of the lower court's refusal to allow and fix the amount of fee for two attorneys of the Shreveport Bar, sworn as witnesses in the case for the purpose, and who testified as to what would be a reasonable fee for plaintiff's counsel's services herein. The lower court held that the attorneys were officers of the court and being present therein, no witness fee was due them. We are in accord with this ruling. The rule is overwhelming that, under such circumstances, attorneys may not recover any witness fee. 70 C.J., par. 70, page 70, and cases cited thereunder.

The judgment appealed from, in our opinion, is correct. It is affirmed with costs.