No. 858

First Circuit

____

## PERRY v. FIDELITY & GUARANTY FIRE CORP. OF BALTIMORE, MD.

____

(October 7, 1931.  Opinion and Decree.)

____

Bascom D. Talley, of Bogalusa, attorney for plaintiff, appellee.

Harvey E. Ellis and Frank B. Ellis, of Covington, attorneys for defendant, appellant.

MOUTON, J. October 3, 1929, defendant corporation insured an auto belonging to plaintiff, Mrs. Perry, against fire and theft. In the policy her occupation is given as housewife; that of her husband, crane operator.

The description of the car, cost to owner, etc., is given as follows:

"Model 1928, Chrysler Sport Roadster, Serial No. 757, Motor No. 59753; Horse Power 6 cylinders; actual cost to owner $465.00 and date of purchase October 2nd, 1929."

It is stated in the policy that the car will be used for the following purposes, only: Pleasure and business.

The auto was insured for an amount not exceeding $300.

It is declared in the policy that the assured's business, employer's name and address, the description of the auto, the facts with respect to its purchase, the uses to which it is and will be put, as contained in the policy, are facts known to the assured to be true. It is also therein stipulated that in the event of any violation by the assured of any agreement, condition or warranty contained in the policy, it shall be void.

The auto was completely destroyed by fire on October 29, 1929. This suit is for the face value of the policy; for interest and attorney's fees.

Judgment was rendered in favor of Mrs. Perry, and the W. F. Simmons Auto Company, intervener in the case, against defendant corporation for $290, with 8 per cent interest thereon from October 2, 1929, and 15 per cent attorney's fees.

Plaintiff answers the appeal, asking that the judgment be increased from $290 to $300, by allowing a penalty of 25 per cent instead of 8 per cent, and $100 as attorney's fees.

Exceptions filed by defendant were overruled.

Counsel for defendant contend that the covenants, stipulations, and conditions of the contract of insurance, hereinabove referred to, are material and were breached by plaintiff; that even if not essentially material as they were conditions precedent to the issuance of the policy, and upon

which it was issued, that the misstatements of the plaintiff in reference thereto vitiate the policy, rendering it null and void.

The specified grounds of resistance to plaintiff's claim are as follows:

First, that the employment of plaintiff's husband was given as a crane operator in the Great Southern Lumber Company, which was false.

Second, that the actual cost of the car was stated to be $465, when in reality it was only $290.

Third, that the model of the car was stated to be of 1928, when in truth the model was of 1927.

Fourth, that plaintiff was engaged in no business, that the car was not used for business and pleasure, as was stated in the policy, was not used in any legitimate business, but was used in an illicit business.

,Fifth, that the proof of loss was not filed within sixty days, as required by the policy.

The last defense as to the filing of proof within the time specified is not pressed in defendant's brief and we may add, in disposing of it, that it is disproved by the record.

The exceptions of no cause of action and want of capacity in intervener to sue being waived by counsel in their brief, we shall proceed to pass on the defenses in the order hereinabove given.

In making the contract of insurance with defendant, plaintiff was represented by Simmons, intervener; and defendant by Dickerson, its local agent, who testifies that Simmons told him that P. O. Perry,

plaintiff's husband, was employed as a crane operator in the Great Southern Lumber Company, as was written in the policy. If such a statement in a policy of insurance could be taken as legally affecting its validity, if false, it can have no such effect here, as it was not made by the assured. The fact is, however, that Simmons says positively that he gave no such information to Dickerson, as he did not know where P. O. Perry was employed at the time, if he was then an employee anywhere.

Three witnesses testified that Dickerson had admitted to them that he had stated to them that he had made wrong or shady statements as a witness in the case for his protection or preservation.

With such testimony in the record, we think that credence should be given to the statement of Simmons that he did not tell Dickerson that plaintiff's husband was employed in the Great Southern Lumber Company.

Even if this information had been given by plaintiff, the assured, and amounted to a warranty vitiating the contract in the event it were false, such a breach could not have increased either the moral or physical hazard under the policy, and could not avail the insurer to avoid liability. Act No. 222, 1928, p. 291; Sigrest v. Federal Insurance Co., 14 La. App. 55, 129 So. 379.

The second defense is in reference to the actual cost of the car stated in the policy at $465.

The auto was sold to plaintiff by Simmons, he testifies, for $465, $175 cash, the balance of $290 in promissory notes, payable at different dates, which the record

shows were placed together with the policy in the hands of the Washington Bank & Trust Company, and to which Simmons, intervener, was subsequently subrogated. It is therefore certain that these notes amounting to $290 formed part of the consideration of the sale of the auto to plaintiff, leaving the question for decision on this issue only as to whether $175 was paid in cash so as to account for the $465 as being the actual cost to plaintiff mentioned in the policy.

In reference to this cash payment Dickerson says that Hooly, adjuster for defendant, asked Perry how this initial payment was made. Dickerson says, Perry stated he had given Simmons a check for that amount on the People's Bank of Biloxi, and that his wife had stated this check had been issued by her husband, but that she had torn it up, and had paid Simmons in cash.

The sale by Simmons to plaintiff is authentic, and was executed October 2, 1929. The price for the auto therein stated is for $465, declared to be purchased by plaintiff with her paraphernal funds, of which $175 is acknowledged to be in cash, and the balance in promissory notes. The declarations of this authentic deed are certainly corroborative of the statements made by Simmons, and account for the tearing by Mrs. Perry of her husband's check issued for the price of the auto and its payment by her, the explanation Dickerson says she gaye of the transaction.

Albert Seals testifies that in 1928 Simmons had sold him the auto in question for $450. This fact does not show that he could not have subsequently sold it to plaintiff for $465, and does not destroy the evidence of Simmons that he got $465 for the car from plaintiff, as it is so stated in the notarial deed to which we have hereinabove referred.

The third contention is that the model given was of 1928 instead of 1927, the correct year. This contention is no factor in the case, except in this, that a model of the year preceding the date given could affect the value of the auto. The preponderance of the evidence shows that the auto was worth about the amount it was sold for to Mrs. Perry, and that the actual cost to her was $465, as declared in the policy.

Simmons, however, denies that he gave Dickerson the model as of the year 1927, and we do not believe he did. This erroneous information, taken independently of the question of the actual cost of the car to plaintiff or of its value, could not be considered a breach of warranty, as it would not increase the moral or physical hazard under the policy.

Fourthly, it is contended that plaintiff was engaged in no business. The policy says plaintiff's occupation is that of housewife. This is not a business in the usual acceptation of the word, but we do not see how this could be a cause authorizing a cancellation of the policy. In this fourth defense, it is also stated that the car was not used for pleasure and business as provided for in the contract. There is no proof that it was not so used. It is also charged that it was used in an illicit business.

It was shown that P. O. Perry, husband of plaintiff, was engaged in the bootlegging business, but there is no proof whatsoever to show that the car was used in the transportation of whiskey or any other intoxicating liquor.

The defenses above disposed of embody a plea in exoneration by defendant of its obligations under its contract of insurance, because of its alleged violation by plaintiff. The proof does not sustain any of the defenses, and defendant was correctly held liable under the terms of the policy; but judgment should have been rendered for $300, the amount of the insurance, and not for $290; which should also have allowed plaintiff 25 per cent damages on the loss and reasonable attorney's fees for the prosecution and collection of the loss. Act 59, 1921, sec. 3, p. 76.

Counsel for defendant frankly admitted that the work done by the attorney for plaintiff in taking testimony in New Orleans and in the trial of the case, and subsequently to be required on appeal, if one was taken, was worth $100. The record and the briefs filed by defendant show that a stubborn defense was presented, was carefully and very ably conducted which was industriously and fully met by counsel for plaintiff.

We think that the sum of $75 should be allowed counsel for plaintiff as attorney's fees, and that the judgment will have to be accordingly increased as above outlined.

It is therefore ordered, adjudged, and decreed that the judgment be amended by allowing plaintiff $300 instead of $290 on the policy; that plaintiff recover against defendant 25 per cent damages on said $300 instead of 8 per cent allowed below; and that plaintiff be decreed attorney's fees in the sum of $75 instead of the 15 per cent granted in the judgment; and that as thus amended and increased, the judgment be affirmed.