149 So. 528

KNOWLES v. DIXIE FIRE INS. CO. OF
GREENSBORO, N. C.

No. 31829.

July 7, 1933.

943

944

St. Clair Adams and St. Clair Adams, Jr., both of New Orleans, for appellant.

McIntosh & Sims and R. V. Reeves, all of Oak Grove, for appellee.

ODOM, Justice.

This is an action to recover on a fire insurance policy amounting to $2,000, $500.00 on stock of goods consisting principally of groceries and stock pertaining to a restaurant, and $1,500 on restaurant and office furniture and fixtures, including counters, shelving, chairs, cash register, frigidaire, water cooler, stove, hot pan, two ice boxes, hot water tank, two ceiling fans, one coffee urn, sink, cooking vessels, and stools. The policy was issued on March 24, 1930, and the property was destroyed by fire on January 9, 1931.

It is alleged that the stock of groceries destroyed was worth $700 and the other property had a value of more than $3,800; that the loss was total, and that the property was insured for less than three fourths of its value.

Defendant was notified of the fire and sent its adjuster, to whom proofs of loss were submitted. The company tendered, and plaintiff accepted, $377.12 in part payment of the loss. The suit is for $2,000, the amount of the policy, less the amount paid. Plaintiff also claims 12 per cent. statutory damages for failure to pay the loss within 60 days, and attorneys' fees amounting to $350. The defense is that plaintiff violated the iron safe and chattel mortgage clauses in the policy. Defendant also disputed the amount of the loss.

The lower court found that the loss on the restaurant fixtures was $1,508.06, and gave judgment against defendant for $822.50, its proportion of the loss, there being a policy in another company covering the same property. There was judgment also for $35 damage to household furniture, plus 12 per cent. statutory damages and $100 attorneys' fees.

Plaintiff's demands for loss on the stock of goods was rejected.

Defendant appealed. Plaintiff answered the appeal, praying that the amount of the judgment be increased from $822.58, plus $35, or $877.58, to $2,000, the amount of the policy, less $377.12 paid, or a net sum of $1,622.88, plus 12 per cent. damages, and that the amount allowed for attorneys' fees be increased from $100 to $350. She also asks that the judgment be so amended as to allow interest from judicial demand.

■ 1. The judgment rejecting plaintiff's demand for loss on the stock of groceries in the restaurant is correct. The policy contains the usual iron safe clause which was unquestionably violated by the insured. In fact, it is admitted that no inventory of the stock on hand was ever made, that no books or other records were kept showing the amount of business transacted "including all purchases, sales and shipments both for cash and credit." Mr. Knowles, who testified for his wife on this point, did not know

what amount of goods was on hand on the date of the fire. There was no way of checking the amount of the loss. No bills or invoices were kept; in fact, no records at all.

He testified that he thought the loss on the stock was between six and seven hundred dollars. But his testimony shows that he did not know. His testimony amounted to no more than a guess.

In the case of Sam Gershon v. North River Insurance Company, published in 177 La. 148, 148 So. 10, 11, which is the latest expression of this court with reference to the iron safe clause in fire insurance policies, we said:

"The iron-safe clause must be complied with substantially to entitle the insured to recover. Such is the contract between the parties. The reasonableness of the clause and its binding effect have been recognized by this and other courts repeatedly. It is a necessary clause in a fire insurance policy on stock in trade, to the end that a just settlement of the loss may be made, should the merchandise insured be destroyed by fire during the term of the policy. Davis v. National Fire Insurance Co., 169 La. 63, 124 So. 147; Stovall v. Sterling Fire Insurance Co., 163 La. 284, 111 So. 707; Lucille Ladies' Ready-To-Wear, Inc., v. Glens Falls Insurance Co., 168 La. 696, 123 So. 295; Thompson v. State Assurance Co., Ltd., 160 La. 683, 107 So. 489; Manuel v. Stuyvesant Ins. Co., 156 La. 813, 101 So. 152. * * *"

Some effort was made by plaintiff to show that the insurer had knowledge that no inventory of the stock had been made and agreed that none need be made, and therefore had waived the covenant set out in the iron safe clause. The District Judge found, and correctly, that this effort failed for lack of proof.

It is also contended by counsel for plaintiff that, inasmuch as the stock of groceries was used only in connection with the restaurant, it was not necessary that an inventory or other records be kept. The testimony shows that the stock consisted of groceries, some to be cooked and served in the restaurant, some to be served without cooking, and some, such as tobacco, cigars, cigarettes, and gum, was to be sold over the counters.

We find no merit in this contention, because it makes no difference whether the groceries were to be sold and carried away or were to be consumed as food on the premises. In either event, it was necessary to keep some record of the amount on hand in order that the loss in case of fire might be determined with at least some degree of accuracy, "to the end that a just settlement of the loss may be made." That is the very purpose of the iron safe clause. Otherwise the insurer would be wholly at the mercy of the insured in making settlements.

2. This policy contained what is usually referred to as the "chattel mortgage clause," which reads as follows:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if the subject of insurance *be personal property and be or become encumbered by a chattel mortgage.*" (Italics ours.)

The subject of insurance in this case was all personal property and some of it was

incumbered with chattel mortgages *at the time of the loss*, and it is contended that this fact alone rendered the policy null and void.

Several authorities, including two leading cases decided by the United States Supreme Court, Sun Ins. Office v. Scott, 284 U. S. 177, 52 S. Ct. 72, 73, 76 L. Ed. 229, decided November 23, 1931, and Hunt v. Springfield Fire & Marine Ins. Co., 196 U. S. 47, 25 S. Ct. 179, 49 L. Ed. 381, decided in December, 1904, are cited in support of this contention.

In the first of these cited cases, it was held that the provisions in a fire insurance policy prohibiting chattel mortgages without consent indorsed on policy are valid stipulations, breach of which constitutes complete defense.

In the course of its opinion the court said:

"The provision in the policies prohibiting chattel mortgages without consent indorsed on the policy is intended to reduce the moral hazard, and is a valid stipulation, the violation of which constitutes a complete defense" —citing Hunt v. Springfield Fire & Marine Ins. Co., supra.

These cases and others cited by defendant hold without qualification that the mere fact that the personal property, the subject of the insurance, at the time of the issuance of the policy or thereafter during the term thereof, becomes incumbered with a chattel mortgage without the consent of the insurer indorsed on the policy, renders it null and void.

If it were not for Act No. 222 of 1928, p. 291, which was the law of this state when the policy here involved was written, we should hold unhesitatingly that the policy was void at the time of the loss. But under that act, when the insurer sets up a breach of any warranty, representation, or condition contained in the policy as a defense, the burden is upon it to show that such breach was such as would increase either the moral or physical hazard under the policy.

The act, in so far as it need be quoted, reads as follows:

"That no policy of fire insurance issued by any insurance company, corporation, association, firm or individual, on property in this State, shall hereafter be declared void by the insurer for the breach of any representation, warranty or condition contained in the said policy, or in the application therefor, nor shall any such breach avail the insurer to avoid liability, unless such breach shall exist at the time of the loss and shall be either such a breach as would increase either the moral or physical hazard under the policy."

In view of the plain provisions of this act, the fact alone that the personal property covered by the policy is or becomes incumbered by a chattel mortgage does not of itself void the policy. On the contrary, if a violation of the chattel mortgage clause in the policy is pleaded as a defense, the insurer must show that a breach of the warranty or condition in this respect did in fact increase the moral hazard. Defendant in this case made no effort to show that the moral hazard was increased, but defended upon the sole ground that the property insured was incumbered at the time of the loss.

In Roach v. Harmonia Fire Ins. Co., 176 La. 356, 145 So. 769, the defense was made,

as here, that a chattel mortgage on personal property covered by the insurance does essentially increase the moral hazard. We did not pass upon the question because it was found that the insurance company had waived whatever right it might have had to contend that the policy was void because of the chattel mortgage on the property.

■ Under Act No. 222 of 1928, p. 291, the question whether the existence of the chattel mortgage on the property subject to the insurance at the time of the loss increases the moral hazard is one of fact which must be determined by the circumstances surrounding each case.

■■ In order that an insurer may avoid liability under a fire policy on the ground that the moral hazard was increased by a breach of the warranty contained in the chattel mortgage clause, it carries the burden of showing that the changed conditions brought about by the imposition of the mortgage were of such real and substantial character as might influence the insured in his conduct and attitude toward the property. The term "moral hazard" as used in the act and in the decisions relates to the pecuniary interest which the insured or some other person has either in protecting the property from loss by fire or destroying it. The moral hazard is least when the pecuniary interest of the insured in protecting it is greatest. It is greatest when his pecuniary interest is such that he might gain most by burning it. While the confession may be a sad commentary on human nature, yet it is a fact known to all that men's pecuniary interests do sometimes influence their conduct even to the extent of burning their own property in

order to collect insurance policies. The books are full of cases upholding convictions for arson where the motive was shown to be pecuniary.

It is conceivable that a man would, purely for gain, mortgage his personal property for all he could borrow, pocket the amount, and then insure it, apply the torch and pay the mortgage with the proceeds of the policy, thereby gaining in a pecuniary way. For that reason and upon that theory fire insurance companies invariably write into thier policies a clause providing that, if the subject of insurance be or become incumbered with a mortgage during the term of the policy without their consent endorsed thereon, the policy shall be void. The courts have uniformly held that such stipulations are valid and binding on the insured, and that a breach thereof is a complete defense.

But under the law as it now exists in this state all the clauses in the policy, whether relating to representations, conditions, or warranties, save and except those relating to such a breach as would be a violation of warranty or condition requiring the insured to take inventories and keep books, records, etc. (the iron safe clause), are modified by Act No. 222 of 1928 to this extent, that the violation of them is not a defense unless it be shown by the insurer that such breach shall exist at the time of the loss, and shall be such a breach as would increase either the moral or physical hazard.

If the property insured is mortgaged for an insignificant amount, an amount out of all proportion to its value, it is not probable that the mere fact of the existence of the mortgage would be an inducement or tempta-

tion to the owner for burning it. He would have no pecuniary interest in doing so. On the contrary, if he were able to secure a mortgage on the insured property for its full value or an amount approximating its value, he would gain by destroying it. In such case he would have no interest in protecting it, and might gain by destroying it. From the standpoint of the mortgagee, he would have no interest in burning the property to collect his debt if the amount of the mortgage was inconsiderable as' compared with the value of the property, for then his debt would be amply secured.

But, if the property was heavily mortgaged and the security for his debt was not ample, he too might be interested in seeing it burn.

Another feature which might enter into the question whether the existence of a mortgage on the property at the time of the loss would increase the moral hazard would be whether the owner was able to make his payments. If he were not and had lost hope, a burn might be a relief, and the mortgagee might feel the same way.

Another circumstance to be considered would be whether the amount of the mortgage *at the time of the loss* had been reduced from its original amount and to what extent. Under the act, it is not the amount of the mortgage as originally given which is to be considered but the amount "at the time of the loss."

What the act means is that, if at the time of the loss, not at any previous time during the life of the policy, there exists such a breach as would reasonably be said to increase the moral hazard, then the policy is void. No hard and fast rule can be laid down as to when such a breach exists. Each case must be determined according to its own facts and circumstances, and this is true whether the hazard be moral or physical. In either event, a plea that the policy has been rendered void by such a breach is a special defense which defendant must maintain in order to avoid liability. This is the view taken by our brethren of the Courts of Appeal for the First and Second Circuits in at least three cases. Godfrey v. Security Ins. Co., decided March 31, 1933, by the Second Circuit, 147 So. 101; Sigrest v. Federal Ins. Co. (First Circuit) 14 La. App. 55, 129 So. 379; and Perry v. Fidelity & Guaranty Fire Corp., 17 La. App. 563, 136 So. 755.

▆ Referring now to the facts of the case at bar, we find that all the property insured excluding the groceries was far in excess of $3,000. The total amount of the chattel mortgages on this property was at one time approximately $1,800, all of which had been paid, except about $337.60, according to plaintiff's counsel and $900 according to defendant's counsel. The record is not clear on this point. But the exact figures are not material. Taking the statement of defendant's counsel, the balance due was less than one-third of the value of the property, and the amount was being reduced by regular payments up to the date of the fire. There is nothing in the record to indicate that the existence of these chattel mortgages increased the moral hazard under the policy at the time of the loss, and counsel point out no reason why the hazard was increased.

As to the amount of the loss on the fixtures, we shall not disturb the finding of the

trial judge. Plaintiff contends that the amount should be increased, and counsel for defendant that it should be reduced. A reading of Mr. Knowles' testimony leaves us in some doubt, but the trial judge saw and heard him, and in a written opinion set out his figures showing the total amount of the loss to be $1,508.06, excluding the groceries, and we accept his estimate.

Plaintiff asks that the amount allowed for attorneys' fees be increased from $100 to $350. Act No. 168 of 1908 provides that "all reasonable attorneys' fees for the prosecution and collection of such loss" shall be paid by the defendant.

A fee of $100 is not adequate compensation for bringing and prosecuting a suit of this kind. The expense of getting up and printing the brief and the expense of a trip to New Orleans from Oak Grove would probably amount to almost that sum. However, the record shows that this case was consolidated for the purpose of trial in the lower court with one against another company on account of the same fire, and we assume that the reason that the trial judge did not allow a larger fee in this case was that he ordered the other company to pay part of the fee. This defendant was ordered to pay six-elevenths of the loss, and should pay that proportion of the fee. The same questions were involved in each case. The other one went to the Court of Appeal on account of the amount involved, where it awaits the decision in this case. A reasonable fee under the circumstances would be $250, and we order defendant in this case to pay six-elevenths of that amount, or $136.66.

There are two other slight errors in the judgment. The lower court allowed $35 for damage to household goods when this policy did not cover loss to such goods. The court gave credit for only $277.12 paid by this defendant when the pleadings show that it paid $377.12.

For the reasons assigned, the judgment appealed from is amended so as to reduce the amount from $857.58 to $822.58, said amount being subject to a credit of $377.12, instead of $277.12, and by increasing the attorneys' fees from $100 to $136.66, and, as thus amended, the judgment is affirmed, costs of appeal to be paid by appellee, all other costs to be paid by appellant.