## TERWILLIGER v. UNION FIRE, ACCIDENT & GENERAL INS. CO.

No. 16899.

Court of Appeal of Louisiana. Orleans.

Dec. 12, 1938.

R. E. Baird, of New Orleans, for appellant.

St. Clair Adams & Son, of New Orleans, for appellee.

McCALEB, Judge.

On August 24, 1933, the defendant issued a policy of fire insurance to the plaintiff, Martin Terwilliger, whereby it insured, for the period of one year, his dwelling located at Yoloskey, St. Bernard Parish, Louisiana, for the sum of $1,500 and the contents thereof for $250. On June 20, 1934, at about 12 o'clock midnight, the property was completely destroyed by fire. Thereafter, a demand was made by the plaintiff upon the defendant company for the payment of the insurance and, upon the latter's refusal to accede to his request, he filed this suit for recovery under the contract.

The insurance company admits that the plaintiff's dwelling was totally destroyed by fire while the policy was in full force and effect but it sets up the following special defenses in avoidance of any liability under the contract: (1) that plaintiff permitted the dwelling to remain unoccupied for a

period of 112 days without its knowledge or consent: (2) that he had procured other insurance on the property without its knowledge; (3) that he violated a clause in the policy relating to fraud and false swearing before and after the loss; and (4) that he burned the premises for the purpose of fraudulently collecting the insurance.

The case proceeded to trial on these issues and resulted in a judgment in favor of the defendant. Plaintiff appealed but, having died during the pendency of the matter in this court, his widow, the duly appointed administratrix of his succession, has been substituted as party plaintiff in the proceeding.

The facts of the case are not seriously disputed and we find them to be as follows:

For a long time prior to the issuance of the policy by the defendant, the plaintiff was the owner and occupant of a combined dwelling house and store situated at Yoloskey, Louisiana, which is a small settlement in St. Bernard Parish. He had this property and its contents insured against fire in the Louisiana Mutual Benevolent Association of Shreveport, La., for the sum of $2,100. On August 24, 1933, he caused the defendant company to issue to him a policy covering the dwelling house portion of the property and its contents for $1,750. After the issuance of this policy, plaintiff resided on the premises until March 1, 1934, when he discontinued his business at Yoloskey and moved to New Orleans where he lived until the date of his death. The fire occurred on June 20, 1934, and, at that time, no one was occupying the premises.

The defendant insurance company claims that, since the plaintiff concedes that he did not live upon the insured property from March 1, 1934, until the date of the fire, a period of 112 days, it is not liable to him under the policy and it points to the following condition in the contract in substantiation of the contention:

"Vacancy or Unoccupancy Permit—Permission is granted for the within described premises to be and remain vacant for a period not exceeding thirty (30) days at any one time, the term 'vacant' being construed to mean an empty building devoid of personal habitation; or to be and remain unoccupied for a period of not exceeding sixty (60) days at any one time, the term 'unoccupied' being construed to mean a dwelling that is entirely furnished, but with personal habitants temporarily absent.

If premises are vacant for a period exceeding thirty (30) days, or unoccupied for a period exceeding sixty (60) days at any one time, this policy is void unless a special form of permission therefor is attached hereto."

Plaintiff, however, asserts that the above quoted condition was not violated by him because it was his habit to visit the insured premises at least once or twice a week from March 1, 1934, until the date of the fire and that on some occasions he even spent the night there. He further says that the property was not unoccupied because he had one of his neighbors in Yoloskey watch the premises for him. This neighbor, one Serigne, testified that the plaintiff had asked him to take care of the place and that, when he was not working, he sometimes kept an eye on the premises.

The condition of the contract hereinabove set forth is free from ambiguity and clearly defines the term "unoccupied" as meaning "a dwelling that is entirely furnished, but with personal habitants temporarily absent." The courts of this country have on numerous occasions construed similar occupancy clauses in fire insurance contracts and it has been universally held that a dwelling is not in a state of occupancy unless there is in it the presence of human beings using the same as their customary place of abode. See Herrman v. Adriatic Fire Ins. Co., 85 N.Y. 162, 39 Am. Rep. 644; Singerman v. Natl. Fire Ins. Co., 12 Orl.App. 129; Home Ins. Co. of New York v. Scales, 71 Miss. 975, 15 So. 134, 42 Am.St.Rep. 512; Home Ins. Co. v. Hardin, 162 Miss. 254, 139 So. 603; Jelin v. Home Ins. Co., 3 Cir., 72 F.2d 326; Sonneborn v. Insurance Co., 44 N.J.L. 220, 43 Am.Rep. 365; Continental Ins. Co. v. Dunning, 249 Ky. 234, 60 S.W.2d 577; Eureka Fire & Marine Ins. Co. v. Baldwin, 62 Ohio St. 368, 57 N.E. 57 and Mauck v. Northwestern Nat. Ins. Co., 102 Cal.App. 510, 283 P. 338.

The leading case on the subject is Herrman v. Adriatic Fire Ins. Co., supra, which has been cited with approval by most of the authorities. The facts of that matter are quite similar to the circumstances here involved. There, it appeared that the plaintiff and his wife made fortnightly visits to the insured dwelling house and that weekly tours of inspection were also made by a farmer and members of his family living nearby. Notwithstanding this, the court found that this was not an occupancy

of the house as contemplated by the terms of the policy and it concluded that "for a dwelling-house to be in a state of occupation, there must be in it the presence of human beings at their customary place of abode, *not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage.*" (Italics ours).

██ Thus, in the case at bar, the irregular visits by the plaintiff to the dwelling house did not constitute an occupancy of the premises within the meaning of the term as defined in the policy. On the contrary, his own statement shows that, when he left the place on March 1, 1934, he intended, at least temporarily, to make the City of New Orleans his place of abode and that, during the 112 days elapsing from the time he left Yoloskey, he at no time lived in the insured dwelling. The fact that he requested his next-door neighbor to watch the property for him is likewise insufficient to show that the dwelling house was occupied as Serigne testified that he did not inhabit the premises.

██ Since it is our opinion that the plaintiff violated the condition of the policy contract, with respect to the occupancy of the dwelling house, we next consider whether this breach increased the physical hazard of the risk for, under the provisions of Section 1 of Act No. 222 of 1928, a violation of the representations, warranties or conditions contained in the policy by the insured is not available to the insurer as a valid defense unless the breach relied upon by it is such "as would increase either the moral or physical hazard under the policy, * * *."

The Supreme Court, in construing the provisions of Act No. 222 of 1928 in the case of Knowles v. Dixie Fire Ins. Co., 177 La. 941, 149 So. 528, remarked [page 531]: "No hard and fast rule can be laid down as to when such a breach exists. Each case must be determined according to its own facts and circumstances, and this is true whether the hazard be moral or physical. In either event, a plea that the policy has been rendered void by such a breach *is a special defense which defendant must maintain in order to avoid liability.*" (Italics ours)

In the instant case, the insurance company has specially pleaded the breach by the plaintiff of the condition respecting occupancy of the premises in avoidance of any liability under the contract and has set forth that his violation was such as to increase both the moral and physical hazard of the risk. In support of this special plea, it tendered the testimony of Messrs. Henry A. Steckler, Ralph M. Pons and John X. Wegmann, expert insurance underwriters. These gentlemen stated, in substance, that the fact that the insured was not occupying the property at the time it burned definitely increased the physical hazard for the reason that an unoccupied building in a sparsely inhabited place was easily accessible to invasion by tramps, prowlers and other trespassers. This evidence is merely the declaration of a fact within the common knowledge of all persons as it is too plain for discussion that an unoccupied and unprotected building is more likely to be set on fire by third persons than one which is inhabited.

The latest expression from the Supreme Court on the question of whether a breach of a policy condition is such as would increase the physical or moral hazard is found in the case of Brough v. Presidential Fire & Marine Ins. Co., 189 La. 880, 181 So. 432. There the court held that [page 434] "the insurer must show that a breach of the warranty or condition in this respect *did in fact increase the moral (or physical) hazard.*" (Words in parenthesis and italics ours).

We are satisfied that the insurance company has proved in this case that the insured's failure to occupy his dwelling house did increase the physical hazard of the risk and, as a consequence, there can be no recovery under the contract. In view of this, it is unnecessary for us to pass upon the other defenses raised by the insurer.

The judgment appealed from is therefore affirmed.

Affirmed.