ELLIS, Judge.
This is a suit by the plaintiff, Ivy G. Lee, against the defendant, Travelers Fire Insurance Company, for the recovery of $975.00 which is alleged to be due the plaintiff under the terms of a contract of fire insurance issued by the defendant to the plaintiff, covering a certain Ford truck owned by the plaintiff, and for the additional sum of $243.75 and the sum of $500.00 as attorney fees, both of the latter being allegedly due by reason of the failure and refusal of the defendant insurance company to pay plaintiff’s claim within sixty days from the date .upon which it received the proof of notification of loss in accordance with Section 3, Act. No. 59, of the Extra Session of the Legislature for the year 1921.'
The defendant in its answer admitted having issued a fire insurance policy to the plaintiff, but denied that the plaintiff had sustained the- loss, of $975.00, and further denied liability under the contract of insur- *499 anee, contending that the policy did not apply where there existed upon the insured property encumbrances which were not declared on or described in the policy and that at the time the defendant issued the policy to the plaintiff covering the Fo.rd truck, such was the case. Counsel entered into a stimulation as to the facts and the case 'was submitted on such facts and the pleadings."
The case resulted in a judgment in favor of the plaintiff for the amount of the loss by fire to the Ford truck in the amount of $800.00 and for an additional sum of $200.-00, being 25% of the amount of the loss as damages, and for the further sum of $150.00 as attorney fees, making a total judgment of $1150.00 with legal interest from date of judicial demand until paid and all costs of this suit, from which judgment the defendant has appealed.
Counsel for both parties agreed that under the law and jurisprudence of this state a fire insurance policy should not be declared void by an insurer for the breach of any representation, warranty or condition contained in the policy unless such breach shall exist at the time of the loss and shall be such a breach as would increase either the moral or physical hazard under the policy. Act No. 222 of 1928; Knowles v. Dixie Fire Insurance Company of Greensboro, N.C., 177 La. 941, 149 So. 528; Godfrey v. Security Insurance Company, La.App., 147 So. 101; Brough et al. v. Presidential Fire & Marine Ins. Co., La.App., 176 So. 895.
Thus, the question to be decided in this case is whether or not at the time of the loss the plaintiff’s breach of the provisions of the policy were such as would ordinarily increase the moral hazard under the policy. The answer to this question is to be determined by the particular! facts and circumstances of each case and the burden of proof in establishing that there has been such a breach of representation, warranty or condition and that the moral hazard has been increased rests upon the fire insurer.
Under the stipulation of facts it is shown that the- insurance policy was issued -on April 15, 1947 and that the truck burned ón June 28th, 1947,'and that, on these respective dates the truck was encumbered with the following mortgages:
1. Chattel mortgage dated November 7, 1946, executed by plaintiff in favor-of Riemer Calhoun, securing a note for $790.00, due in eight 'monthly installments of $98.75 each, beginning December 7, 1946, covering said truck and a Nabor’s trailer. ' April 15; 1947 — Balance Due, $395.00j in arrears one monthly installment; June 28th, 1947— Balance due, $395.00; in arrears three monthly installments. Paid in full subsequent to September 19th, 1947.
2. Chattel Mortgage dated January 11, 1947, executed by Homer Lee, the son of plaintiff, in favor of P. C. Fair Insurance Agency, securing a note for $737.81, due in-ten monthly installments of $73.79 each, beginning on February 11, 1947, covering said' truck and a Nabor’s Trailer. April 15th, 1947 — Balance due $664.02; in arrears 2 monthly installments; June 28th, 1947— Balance due $64.02, which was subsequently paid.
3.. Chattel mortgage dated February 28,. 1947, executed by plaintiff in favor of V. H. Brumley, securing a note for $200.00,, due June 1, 1947, covering said truck. Past due on June 28th, 1947, remains unpaid.
4. Chattel mortgage dated April 15,. 1947, executed by plaintiff in favor of Fred' Rivers, securing a note for $1152.00, due in twelve monthly installments of $96.00> each, beginning May 17, 1947, covering-said truck, agreed value $1100.00; one Dual Wheel Trailer, agreed value $350.00;' One-Craden Wench, agreed value $150.00; and', one pair of horses, agreed value $350.00, or a total value of $1950.00. The note secured' by this chattel mortgage was immediately-sold to Caddo Finance Corporation and it is this encumbrance which was declared in the fire insurance policy. The trial judge-in his reasons for judgment stated that counsel for defendant in his brief gave as. the balance due on the’ date that the truck: burned $990.00 which would show a payment of $162.00 on this mortgage indebtedness which, even under this statement would place the plaintiff in arrears $30.00-' on June 15, 1947. We do not doubt’ the-statement of the trial judge in the least but *500 on this appeal we do not-have the brief filed in the lower court and under the stipulation of facts there-was nothing paid on this mortgage on the date of the fire and there is no contention by counsel for plaintiff in brief filed that any payment was made, however, defendant in his brief admits that in its, trial brief it was stated that, there was $990.00 due on this mortgage on the date of the fire.
The question involved in this case was the subject matter of Act No. 222 of t-he Legislature of 1928 as well as many cases decided by the Courts of this and other states. Section. 1 of Act No. 222 of 1928, Louisiana General Statutes, § 4191, provides in part: “No policy of fire insurance issued by any insurance company, corporation, association, firm or individual, on property in this State,. shall hereafter be declared void by the insurer for the breach of any representation, warranty or condition contained in the said policy, or in the application therefor, nor shall any such breach avail the insurer to avoid liability, unless such breach shall exist at the time of the loss and shall be either such a breach as would increase either the moral or physical hazard under the policy, * *
“Moral Hazard” is defined in Vol. 27 “Words and Phrases”, Perm.Ed., Page 548, as follows: “ ‘Moral Hazard,’ in insurance, is but another name for a pecuniary interest in the insured to permit the property to burn. Statistics, experience, and observation all teach that the moral hazard is least when the pecuniary interest of the insured in the protection of the property against fire is greatest, and that the moral hazard is greatest when the insured may gain most by the burning of the property. Syndicate Ins. Co. v. Bohn, 8 Cir., 65 F. 165, 170, 12 C.C.A. 531, 27 L.R.A. 614.”
In the Godfrey v. Security Insurance Company case, La.App., 147 So. 101, 103, the Court in quoting the trial judge stated: “If the property insured was mortgaged for more than its value or for a sum approximating its value, there is little doubt that as a legal proposition the moral hazard would be- -increased, because the interest of the insured would be greatly lessened or eliminated, and he would not have the same interest in protecting it from loss; *
The Supreme Court in the case of Knowles v. Dixie Fire Insurance Company of Greensboro, N.C., 177 La. 941, 149 So. 528, 531, stated:
“Under Act No. 222 of 1928,.p. 291, the question whether the existence of the chattel mortgage on the property subject to the insurance at the time of the loss increases the .moral hazard is one of fact which must be determined by the circumstances surrounding each case.
“In order that an insurer may avoid liability under a fire policy on the ground that the moral hazard was increased by a breach of the warranty contained in the chattel mortgage clause, it carries the burden of showing that the changed conditions brought about by the imposition of the mortgage were of such real and substantial character as might influence the insured in his conduct and attitude toward the property. The term ‘moral hazard’ as used in the act and in the decisions - relates to. the pecuniary interest which the insured or some other person has either in protecting the property from loss by fire or destroying it. The moral hazard is least when the pecuniary interest of the insured in protecting it is greatest. It is greatest when his pecuniary interest is such that he might gain most by burning it. While the confession may be a sad commentary on human nature, yet it is a fact known to all that men’s' pecuniary interests do sometimes influence their conduct even to the extent of burning their own property in order to collect insurance policies. The books are full of cases upholding convictions for arson where the motive was shown to be pecuniary.
******
“•But under the law as it now exists in this state all the clauses in the policy, whether relating to representations, conditions, or warranties, save and except those relating to such a breach as.would be a violation of warranty or condition requiring the insured to take inventories and keep books, records, etc. (the iron safe clause), are *501 modified by Act No. 222 of 1928 to this extent, that the violation of them is not a defense unless it be shown by the insurer that such breach shall exist at the time of the loss, and shall be such a breach as would increase either the moral or physical hazard.
“If the property insured is mortgaged for an insignificant amount, an amount out of all proportion to its value, it is not probable that the mere fact of the existence of the mortgage would be an inducement or temptation to the owner for burning it. He would have no pecuniary interest in doing so. On the contrary, if he were able to secure a mortgage on the insured property for its full value of an amount approximating its value, he would gain by destroying it. In such case he would have no interest in protecting it, and might gain by .destroying it. From the standpoint of the mortgagee, he would have no interest in burning the, property to collect his debt if the amount of the mortgage was inconsiderable as compared with the value of the property, for then his debt would be amply secured.
“But, if the property was heavily mortgaged and the security for his debt was not ample, he too might be interested in seeing it burn.
“Another feature which might enter into the question whether the. existence of a mortgage on the property at the time of the loss would increase the moral hazard would be whether the owner-was able to make his payments. If he were not and had lost hope, a burn might be a relief, and the mortgagee might feel the same way.
“Another circumstance to be considered would be whether the amount of the mortgage at the'’time of the loss had been reduced from its original amount and to what extent. Under the act, it is not the amount of the mortgage as originally given which is to be considered but the amount ‘at the time of the loss.’
“What the act means is that, if at the time of the loss, not at any previous time during the life of the policy, there exists such a breach as would reasonably be said to increase the moral hazard, then the policy is void. No hard and fast rule can be laid down as to when such a breach exists. Each case must be determined according to its own facts and circumstances, and this is true whether the hazard be moral or physical. In either event, a plea that the policy has been rendered void by such a breach is a special defense which defendant must maintain in order to avoid liability. This is the view taken by our brethren of the Courts of Appeal for the First and Second Circuits in at least three cases. Godfrey v. Security Ins. Co., decided March 31, 1933, by the Second Circuit, La.App., 147 So. 101; Sigrest v. Federal Ins. Co. (First Circuit) 14 La.App. 55, 129 So. 379; and Perry v. Fidelity & Guaranty Fire Corp., 17 La.App. 563, 136 So. 755.”
The Supreme Court again, in the case of Brough v. Presidential Fire and Marine Insurance Company, La.App., 176 So. 895, 904, made the following statement:
“Surely it cannot'be said that, for a defendant insurer to successfully resist on the ground of increase in moral hazard, there must be proof that the particular insured was actually tempted to destroy his property, because, if such proof were required, it is obvious that in almost no case could such fact be shown. * * * The statute itself does not say that there must be an actual increase in the moral hazard, but that the facts must be such as ‘would’ ordinarily increase the hazard. We take it to mean that all that is necessary is that the evidence shall show facts which, not taking into consideration the personal integrity of the individual insured, would, in the ordinary case, create in the insured satisfaction with destruction by fire. If the result would create in the ordinary individual such a sense of satisfaction, then the moral hazard has been increased.
“In the same article of the Tulane Law Review, referred to above, reference is made to many cases, in each of which it was held that there had been an increase in the moral hazard, and it is said that: ‘Since the increase in risk in the above cases was not an increase in physical risk but resulted from- the insured’s diminished interest in the insured property, it seems patent that it was equivalent to an increase in moral hazard.’ ”
*502 • Referring to' the facts of the present case with an 'application of the law as above cited and as fully stated in the Knowles case in mind, we find that on April 15th, 1947 when Mortgage No. 4 above described was placed upon the Ford truck and trailer, together with other movable property, the total amount of mortgages against this property amounted to $2,411.02. On the following day, April 16th, 1947, the plaintiff, having been given by Fred .Rivers, original mortgagee of mortgage'No. 4, a sum of money sufficient to pay and satisfy Mortgage No. 2 which was then held, by the First National-Bank at Mansfield, the balance due amounting to $664.02, did. on the 16th day of April, 1947 go to the First National Bank in Mansfield and pay on the balance due on Mortgage No. 2 the sum of $600.00, leaving a balance of $64.02, and, therefore, on April 16th, 1947 the mortgage indebtedness amounted to $1811.02.
On April 15th, 1947 the value of the property mortgaged -was $1950.00 and of this amount the Ford truck was valued at $1100.00. On April 16th, 1947, therefore, under the. authorities cited, the moral hazard had certainly been increased, for .although it is true that there was personal property besides the truck mortgaged insecure the $2411.02, the fact remains that the truck was encumbered for this full amount. On April 16th, as stated, the indebtedness had been reduced by $600.00 and even then it is well to note that the plaintiff kept $64.02 of the money which was given him for the specific purpose of paying and cancelling Mortgage No. 2, and the $600.00 did not -come out of -his pocket -but was obtained out of the proceeds of Mortgage No. 4 and, in our opinion, did not change the situation nor lessen to any extent the in-' crease in the moral hazard which existed on April 15, 1947.. Certainly, on April 15th or April 16th, 1947 the property insured, the Ford truck of plaintiff, was not mortgaged for an insignificant amount but was mortgaged for an amount out-of all proportion to its value. It must be remembered that on April 15th, 1947, the - date upon which the policy was issued, the .defendant insurance company had notice only of Mortgage No. 4 for $1152.00 whereas on that date there- really existed additional and! undisclosed mortgages in the sum of $1259.-02, and on April 16th, after the payment of $600.00, naturally the undisclosed -amount of mortgages would be reduced to $659.02..
On June 28th, 1947, the date upon which the truck burned, if we accept $990.00 as a balance due on mortgage No. 4 thereby-showing that plaintiff had paid upon it: $162.00, the total mortgage indebtedness on: that date would be $1649.02. As we view the record, even though the defendant in-his trial brief stated that this was the-amount' due on the mortgage, under the-stipulation of fact it does not show any payment on this mortgage and, therefore;, under this state of facts the mortgage indebtedness on June 28th, 1947 would be the-same as it was on April 16, 1947. Be that as it may, we do not think that- the difference of $162.00 would change the final decision. Under the stipulation of facts, on June 28th, the fire damage was $800.00 and the damaged truck sold for $125.00 making a total value of $925.00 which this truck had on the date of the fire. Thus, a $925.00 truck was encumbered with mortgages in the amount of $1649.02 or $1811.02. If we-should take into consideration or look at the case from the standpoint of the entire property mortgaged, we still think the answer should be the same, for the value of all the-property on June 28, 1947, placing a value of $925.00 on the truck, and- leaving, the-value of the other personal property mortgaged under Mortgage No. 4 at the value •fixed, therein, would be a total of $1775.00' as against a mortgage indebtedness of. $1649.02. It might -be argued that the insurance company knew of $1152.00 of-this amount, which is perfectly true, but .this, fact does not alter our opinion, that, under the law the additipnal undisclosed amount of $659,02 certainly changed the entire picture when viewed in- the light of the settled jurisprudence. In our opinion, on the date of the issuance of the insurance policy, as well as on the date of the loss, June 28, 1947 the property was certainly -mortgaged, to-say the least, for its full value, in fact, for from 1J4 to almost twice its value. The truck alone could have been, seized and sold to satisfy the entire.mortgage indebted *503 ness on April 16th, 1947, which amounted to $1811.02, or on June' 28th, 1947, which mortgage indebtedness amounted to $1649.02, whereas on these dates as stated the value of the truck was respectively $1100.00 and $925.00. Therefore, on any one of- the three dates mentioned, April 15th, April 16th, or June 28th, 1947, the plaintiff would have gained by destroying the truck. He would have had no interest in protecting it or, to put it another way, “he too/ might be interested in seeing- it burned.” He could save the horses which were not mortgaged except to-Caddo.
In addition to the above facts and circumstances, there are other facts which are very pertinent to the issues in this case and which the Supreme Court in the Knowles case considered pertinent as to whether the existence of the mortgages on the property at the time of the loss increased the moral hazard. It is relevant and pertinent to inquire whether the owner was able to malee his payments. If he were not and had lost hope, a burn might be a relief and the mortgagee might. feel the same way. It is shown by the facts in this case that the plaintiff mortgaged the truck first, on November 7th, 1946 and that he was in arrears on April 15th, 1947 one payment and on that date there was a balance due of $395.00 which remained due and unpaid on June 28th, 1947, the date of the loss.. Approximately sixty days later, on January 11, 1947, he again mortgaged this truck and on April 15th, 1947 was in arrears three monthly payments and there is nothing in the record to indicate that he could have paid the $600.00 on this mortgage on April 16th, as he did, unless he had secured the money by placing Mortgage No. 4, dated April 15, 1947 on the truck. This payment was made with somebody else’s money arid was made by increasing the mortgage indebtedness that much and more. Even on June 28th, although he had been given the full amount of money to cancel this mortgage, there was still a •balance 'due of $64.02. In slightly more than thirty days he again mortgaged this truck for $200.00 which was past due and unpaid on June 28th, 1947. Then, in slightly less than sixty days, he again mortgaged the truck (mortgage No. 4) and while we find nothing definite to show any payment on this mortgage, if we accept a statement of defendant’s counsel made in his trial brief of the payment of $162.00 he was still in arrears on June 28th, 1947 in at least the sum of $30.00 -on this mortgage. Therefore, considering these facts, the mortgaging of the property at short intervals, the fact that he was in arrears in every mortgage on the date of the loss, the three existing mortgages on the daté that he took out Mortgage No. 4 and the policy of insurance, it certainly leads to the conclusion that he was not able to make his payments.
Also, at the time of the loss, under the most favorable view of the facts that could be given in behalf of the plaintiff, he had only paid $162.00 out of his own money personally. We presume this was his personal money, although he had retained $64.02 which was given to him to pay on Mortgage No. 2, and after payment of the $600.00 he would still have had $552.00 remaining, the proceeds of the fourth mortgage. In addition, the record shows that outside of the $162.00 paid on Mortgage No. 4, plaintiff had made no payment on any of the outstanding mortgages since March 1947 which was Mortgage No. 1. We, therefore,' cannot agree with the trial judge when he say.s, “In the present case there is nothing in the evidence to indicate that plaintiff was unable to pay the debts secured by a mortgage on his truck but on the contrary the record shows that he made substantial payments on such debts during the short period of time which elapsed between the issuing of the policy and the date of the loss.”
 In cases of this kind, as stated in the Brough case, supra, the personal integrity of the individual insured is not taken into consideration, but otherwise the facts must be such that would ordinarily increase the hazard. In this case, the plaintiff evidently was not making á success and it was necessary for him to place four mortgages on his property from November 1946 to April 1947. The first three mortgages amounted to $1727.81, of which amount he was only able to repay personally $468.79, and on the date of the loss by fire, June 28, 1947, he was delinquent on all four of the *504 mortgages. These facts are strong evidence that he would gain by destroying or at least would-have no interest in protecting the property and, therefore, under all the facts in this case, at the time of the loss there did exist such a breach as can reasonably be said would have increased the moral hazard and the policy was, therefore, void.
It is, therefore, ordered that the judgment of the District Court be reversed, and that plaintiff’s suit be dismissed at his costs.
J. CLEVELAND FRUGE, J., sitting ad hoc.