**NIAGARA FIRE INSURANCE COMPANY, Appellant,**

v.

**Paul Edward EVERETT, Appellee.**

**No. 18596.**

United States Court of Appeals
Fifth Circuit.

June 28, 1961.

Rehearing Denied Sept. 6, 1961.

Cameron, Circuit Judge, dissented.

H. Frank Foster, III, Bienvenu & Culver, New Orleans, La., for Niagara Fire Ins. Co., appellant.

Henry A. Mentz, Jr., Mentz & Ford and F. Carter Johnson, Jr., Hammond, La., Trial Attys., for appellee.

Before CAMERON and WISDOM, Circuit Judges, and THOMAS, District Judge.

DANIEL HOLCOMBE THOMAS, District Judge.

Alleging breaches of the conditions of the policy of insurance under such circumstances as to void the contract, insurer appeals from the findings and conclusions of the district court, which tried the case without a jury and entered judgment for the insured.

The policy sued on covered a dwelling and contained a prohibition (unless waived in writing) against vacancy beyond the statutory period of sixty days.[1] It also contained a prohibition against other insurance covering the same premises.[2]

The property insured was a one-story frame farm dwelling located approximately three miles from Loranger, Louisiana, (and the volunteer fire department of that town). This dwelling had been insured by appellant against loss by fire to the amount of $2,500 under policy

---

[1] "Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring

"(a) while the hazard is increased by any means within the control or knowledge of the insured;
or

"(b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days;"

[2] "Other Insurance—Unless otherwise provided in writing added hereto, other insurance covering on any building which is covered under this policy is prohibited. If, during the term of this policy, the insured shall have any such other insurance, whether collectible or not, and unless permitted by written endorsement added hereto, the insurance under this policy, insofar as it applies to the building(s) on which other insurance exists, shall be suspended and of no effect."

issued April 18, 1956, for a term of one year. On the date the policy was issued, the premises were owned and occupied by appellee, who operated a dairy farm on the land on which the dwelling was situated. Six months after the policy was issued, appellee temporarily lost the use of his right hand in a hunting accident and was no longer able to operate the farm. He left the insured premises on Sunday, November 25, 1956, to move to Missouri, where his wife had secured employment. The day before his departure, he went to the Dameron-Jones Insurance Agency and requested that an additional policy of fire insurance be issued on the premises in which he had been living. A representative of that agency inspected the premises on Monday, November 26, 1956, and issued a policy in the amount of $3,000 in the Gulf Union Insurance Company. That insurance company and its agent were entirely different from, and had no connection with appellant insurance company or its agent. Appellee did not notify appellant or its agent, or anyone else having any connection with appellant, about obtaining the additional insurance. He did testify, however, that he understood the Dameron-Jones Agency would notify the other insurance carrier.

The premises thus insured were totally destroyed by fire on February 8, 1957. No one had lived in the premises from the date appellee vacated them until the date of the fire, a total of seventy-five days. The cause of the fire was never definitely determined.

When appellant insurance company refused to honor the policy, the insured appellee brought suit to recover the face amount thereof ($2,500), together with statutory penalty, interest, and attorneys' fees. In its answer, the appellant insurance company admitted the issuance of the policy, but pleaded the following special defenses in avoidance of any liability under the contract: (1) the insured procured other insurance on the property without the knowledge or consent of the insurer; and (2) the insured permitted the dwelling to remain unoccupied for a period in excess of sixty consecutive days, without notice to insurer. Both of these defenses alleged violation of conditions of the policy under such circumstances as to increase the moral and physical hazard of loss by fire.

A fire insurance policy in Louisiana is statutory in origin. In determining the question of liability we must invoke the appropriate section of the insurance code of Louisiana as set forth in Louisiana Statutes Annotated—R.S. 22:692:

"No policy of fire insurance issued by any insurer on property in this state shall hereafter be declared void by the insurer for the breach of any representation, warranty or condition contained in the said policy or in the application therefor. Such breach shall not avail the insurer to avoid liability unless such breach (1) shall exist at the time of the loss, and be either such a breach as would increase either the moral or physical hazard under the policy, or (2) shall be such a breach as would be a violation of a warranty or condition requiring the insured to take and keep inventories and books showing a record of his business. Notwithstanding the above provisions of this Section, such a breach shall not afford a defense to a suit on the policy if the fact or facts constituting such a breach existed at the time of the issuance of the policy and were, at such time, known to the insurer or any of his or its officers or agents, or if the fact or facts constituting such a breach existed at the time of the loss and were, at such time, known to the insurer or to any of his or its officers or agents, except in case of fraud on the part of such officer or agent or the insured, or collusion between such officer or agent and the insured."

The findings and conclusions of the district court, not hitherto published, are summarized as follows: "There was no increased physical or moral hazard by reason of the vacancy, the plaintiff's financial condition or the additional in-

surance; also, the insurance company had knowledge of the fact of the vacancy through its agents, Mr. and Mrs. A. L. Pecora, and under the terms of R.S. 22:-692, the alleged breach or breaches may not be availed of by insurance company to withhold payment." Judgment was rendered in favor of the insured for the face amount of the policy, although insured's claim for penalties and attorneys' fees was denied.

The principal questions presented on this appeal are whether the district court erred in finding: (1) there was no increased physical hazard by reason of the vacancy of the insured premises beyond the sixty-day provision of the policy; (2) there was no increase in the moral risk by reason of the existence of a second and subsequent policy of insurance on the same premises; and (3) the insurer had knowledge of the vacancy.

■ The findings of the district court are not lightly to be set aside. Rule 52(a), Fed.Rules Civ.Proc. 28 U.S.C.A. Sanders v. Leech, 5 Cir., 1946, 158 F.2d 486, 487; United States v. Schultetus, 5 Cir., 1960, 277 F.2d 322. The burden of proving increased hazard is upon the insurance company. The particular circumstances of each case determine whether or not the risk has been increased. Knowles v. Dixie Fire Insurance Co. of Greensboro, N. C., 177 La. 941, 149 So. 528; Lee v. Travelers Fire Ins. Co., 219 La. 587, 53 So.2d 692, quoting Knowles v. Dixie Fire Ins. Co. Knowledge of the existence of the breach on the part of the insurer makes proof of increased hazard unavailing as a defense. La.Stats. Annotated—R.S. 22:692. With these principles in mind, we examine the three questions presented on appeal.

■ There is no finding, no contention, and no evidence that the fact of the existence of additional insurance was known to the insurance company or its agent prior to or at the time of the loss, so as to constitute waiver of that condition of the policy. This breach is a valid defense if the insurance company sustained the burden of proving accompanying increased moral hazard. As to knowledge of the existence of vacancy beyond the sixty-day period, amounting to waiver of that condition of the insurance contract, the district court found that the insurance company did have knowledge of the fact of the vacancy through its agents, Mr. and Mrs. A. L. Pecora (or Pecorara).

■ The evidence with reference to the knowledge and agency of the Pecoras is substantially as follows: The premises of appellee had been remodeled and added to from time to time, with much of the labor furnished by the appellee and much of the capital furnished by loans from local banks. Mr. Pecora was an officer in the Community State Bank of Independence, Louisiana. In April 1956, appellee applied to that bank for a loan of $6,000, which was approved. The loan was secured by a mortgage on the premises, including sixty acres of land and a number of head of cattle. This transaction was handled by Mr. Pecora. The premises were not at that time insured, and the bank required that an insurance policy be furnished. This policy was placed by the bank (acting through Mr. Pecora) with the Peerless Insurance Agency of Independence, Louisiana, which represented the appellant, Niagara Fire Insurance Company. Mrs. Pecora operated that agency in her home. Neither she nor the appellee ever saw each other prior to the trial of this cause in the district court. Three months after the policy was issued, the loan on the house was paid to the bank on July 16, 1956. Appellee accomplished this by borrowing $5,000 from Florida Parishes Homestead of Hammond, Louisiana, which paid off the bank and obtained the existing policy of insurance held by the bank. After July 16, 1956, the Community State Bank had no interest in the fire insurance policy which is the subject of this suit. Appellee testified that shortly before he left for Missouri in November 1956, he went by the Community State Bank to advise Mr. Pecora that he was leaving. He still had a small note at that bank. Mr. Pecora was not in the

bank when appellee called, and denied receiving any word then or later of appellee's removal to Missouri. Mr. Pecora also denied that he was an agent of Niagara Fire Insurance Company. There is some testimony controverting Mr. Pecora's lack of knowledge that the house was vacant. There is no evidence that Mrs. Pecora had personal knowledge of the fact that the insured premises were vacant. The fact that the Pecoras were husband and wife is insufficient of itself to charge her with knowledge or him with agency, so as to create a waiver of the sixty-day vacancy provision of the policy.

This brings us to the question of whether the insurance company sustained the burden of proving that the breaches asserted to avoid liability were such as to increase the moral or physical hazard under the policy. The insurer offered the testimony of two expert insurance underwriters to support its contention that a vacant dwelling constitutes an increase of the physical hazard of fire. Mr. Ralph Pons, an expert of approximately forty years' experience in the field of fire insurance underwriting, and Mr. Sidney Ford, an expert with approximately fifteen years' experience as Director of the Fire Prevention Bureau in New Orleans and five years with the federal government as State Safety Representative in Louisiana, both testified that in their opinion a vacant dwelling constitutes an increase of the physical hazard of fire. The fundamental basis for this is lack of supervision and/or loss of interest in the premises.

The language of the policy contract made it clear that when a policy is issued it is presumed and understood that the dwelling is to be inhabited. If there is any change in this status, it is provided that the insurer must be notified in writing and given an opportunity to cancel the policy or to continue it in force under an increase in premium or a reduction in the amount of insurance coverage. Appellant in the instant case was not given this opportunity. By statutory provision,[3] an insurer is required to assume the risk during a limited period of vacancy, but is not required to assume the risk for a period beyond sixty consecutive days. The premium charge for the policy includes the acceptance of the sixty-day risk, but no more. All insurance risk, premiums and proceeds are based upon mathematical experience which indicates to the insurer what risk it is willing to assume for a stipulated premium. An insurer must, therefore, know all the facts which make up a risk so that its mathematical experience will be accurate and reliable in order that applicable premiums may be computed properly and the proper decisions made as to whether the risk will be undertaken at all. That mathematical experience indicates vacancy of a dwelling increases the physical hazard of fire is evidenced by the prohibition against vacancy in the contract. The principle that vacancy of a dwelling constitutes an increase of the hazard by fire has been recognized and accepted judicially both by the State courts and by this court. Terwilliger v. Union Fire, Accident & General Ins. Co., La.App., 185 So. 43; Kugler v. Philadelphia Fire & Marine Ins. Co., D.C., 105 F.Supp. 158, affirmed 5 Cir., 204 F.2d 297, certiorari denied 346 U.S. 873, 74 S.Ct. 122, 98 L.Ed. 381.

On the evidence as to physical hazard, the findings of the district court are quoted below.[4] It is true that appellee testified he had shut off the butane and

3. Louisiana Statutes Annotated—R.S. 22:-691.

4. "The physical hazard is not necessarily increased by reason of a vacancy, but the increased hazard would depend upon the particular circumstances of the case. Considering that the butane was disconnected, the electric and gas appliances removed, that there were no adjoining buildings, that the house was surrounded by rye grass (which is green in winter and does not burn), that the Fire Marshal's report classed the fire as accidental, that there was no proof of transients or hoboes in the area, and the fact that the house was under close supervision of plaintiff's brother who lived across the street, there was no increased physical hazard by reason of the vacancy."

electricity and had removed the appliances from the house. The Fire Marshal's report classed the fire as accidental. He found some evidence indicating the possibility of defective wiring at an outlet, and appellee stated he had had some trouble with appliances plugged to it. It developed, too, that even though the switch box at the house was supposedly cut off, the power company had not cut off the electricity from the line outside, presumably because work was being done on the highway. The supervision afforded by appellee's brother, who lived across the road, consisted of daily observation of the exterior from some distance. The brother testified he was only in appellee's house twice during the period of vacancy. On both occasions he was showing it to prospective purchasers.

■■ We think the insurance company met the burden of proof that vacancy here increased the physical hazard. It is common knowledge that in almost any dwelling vacant more than sixty days, the gas and electricity would be cut off, and the house would be under some observation from the exterior.

■■ Because we hold that the burden was met as to increased physical hazard, an inquiry into the aspect of moral hazard in the additional insurance is perhaps unnecessary. However, the question has been presented. Moral hazard, in insurance, is but another name for a pecuniary increase to the insured should the property burn. Statistics, experience, and observation all teach that the moral hazard is least when the pecuniary interest of the insured in the protection of the property against fire is greatest, and the moral hazard is greatest when the insured may gain most should the property burn. Syndicate Ins. Co. v. Bohn et al., 8 Cir., 65 F. 165, at page 170; Connecticut Fire Ins. Co. v. Manning et al., 8 Cir., 160 F. 382, at page 385; Knowles v. Dixie Fire Insurance Co. of Greensboro, N. C., supra; Lee v. Travelers Fire Ins. Co., supra. The insured premises were appraised at $4,500 for loan purposes. The Niagara policy was in the amount of $2,500, and the Gulf pol-

icy was in the amount of $3,000. The insured valued the house at $9,000, exclusive of the land, for purposes of sale. The insured had other debts beside the mortgage on the house and land. Both he and his wife were working, but they had little or no money in the bank. He was no longer able to operate the dairy farm and had moved from the state. He was endeavoring to sell the place. We think the import of the evidence is that the pecuniary interest of appellee in his property at the time of the fire was such that he would gain most as a result of its destruction, and he did not have an interest in its protection.

The judgment of the district court is reversed and the cause remanded for the entry of judgment for appellant.

Remanded.

CAMERON, Circuit Judge, dissents.

Rehearing denied; CAMERON, Circuit Judge, dissenting.